ANSTEAD, Judge.
This is an appeal from a post-judgment order setting aside a jury verdict for appellants in their federal civil rights action against the appellees. We affirm.
In 1981 Raben-Pastel commenced construction of a multiple-phase residential project in the City of Coconut Creek. After remedial efforts failed to eliminate cracks that had appeared in several of the buildings, the city’s chief building officer, James Cowley, issued official stop-work orders on the affected buildings pending implementation of agreed repairs. Subsequently, an engineering firm retained by the city as a special consultant and inspector for the project, approved repair plans to correct the cracks. On July 2, 1981, the engineering firm officially certified to the city that the repairs were complete. Notwithstanding the city engineer’s certification, Cowley refused to lift the stop-work order for some five months'. During that time, Raben-Pastel twice filed appeals to the Broward County Board of Rules and Appeals in addition to filing a petition for writ of mandamus in the United States District Court.
During the five-month interim between certification and the eventual lifting of the stop-work order, media coverage of the dispute suggested that the unoccupied, unfinished buildings were unsafe. The project was eventually closed down by appellants. Subsequently, Raben-Pastel sued the entities allegedly responsible for the cracks in the buildings for design negligence and the City of Coconut Creek and James Cowley, as its chief building official, under 42 U.S.C. section 1983 for violation of its civil rights. It was claimed that the cracks, the arbitrary delay in restarting the project, and the attendant publicity over the safety of the project caused it to fail. Prior to trial Raben-Pastel settled with everyone but the city and Cowley.
A jury rendered a verdict for appellants, and, in a special verdict, concluded that Cowley “intentionally violated and/or misapplied the provisions of the South Florida Building Code or acted arbitrarily, capriciously and unreasonably” in refusing to lift the stop-work order. The jury further found that Cowley’s actions were representative of “an official policy, custom or practice of the City of Coconut Creek.” However, in post-trial proceedings, the trial court set aside the jury verdict and entered judgment in favor of Cowley and the city based on its conclusion that Raben-Pastel had: 1) a procedural rather than a substantive due process claim; and 2) an adequate remedy at law thereby precluding it from recovery under section 1983.[1] The court also held that Cowley and the City were entitled to a set-off in the section 1983 action because of settlements Raben-Pas-tel had made with the other defendants prior to trial.
MUNICIPAL LIABILITY UNDER SECTION 1983
The appellants initially claim that the trial court erred in setting aside the jury’s verdict. Their argument is two-pronged. First, they claim that Cowley’s refusal to lift the stop-work order violated their right *887 to continue construction of their project without unreasonable interference. Second, they claim that the City was responsible for Cowley’s action since it deferred to his judgment on the issue of the stop-work orders. Considered together, appellants claim these actions gave rise to a cause of action under 42 U.S.C. section 1983 which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects ... any citizen of the United States ... to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
While cities have been held to be “persons” subject to liability under the provisions of this act, the kind of municipal activity that may give rise to liability has not been clearly defined. It has been held, for example, that a city may not be held liable under section 1983 simply on the basis of its common-law responsibility for the acts of its employees. On the other hand, cities have been held responsible in cases where an official city policy itself is shown to be the cause of the constitutional deprivation.
Recently, the United States Supreme Court, in City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), sought to clarify the law of municipal liability under section 1983. Praprotnik was an architect employed by the city of St. Louis in a management-level city planning position who, after sucessfully appealing a temporary suspension to the city’s Civil Service Commission, was transferred to a clerical position in another city agency before eventually being laid off the following year. In his section 1983 suit, Praprot-nik claimed that the city violated his First Amendment rights by laying him off as a retaliatory action taken in response to his suspension appeal. He won at the trial court level. On appeal, the Eighth Circuit affirmed, finding that the jury had implicitly determined that Praprotnik’s layoff was brought about by an unconstitutional city policy. Praprotnik v. City of St. Louis, 798 F.2d 1168 (8th Cir.1986). Defining a “policymaker” as one whose employment decisions are “final” in the sense that they are not subjected to de novo review by higher ranking officials, the Court of Appeals concluded that the city could be held liable under section 1983 for adverse personnel decisions made by the city supervisors. Id. at 1175.
The Supreme Court reversed, and in doing so attempted to clarify the principles set out in Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), wherein the Court had endeavored to refine the test for determining when a decision by a city employee on a single occasion may be sufficient to establish an unconstitutional municipal policy. 475 U.S. at 478-80, and nn. 7-8, 106 S.Ct. at 1297-99, and nn. 7-8. In Pembaur, a majority of the Court agreed that: 1) municipalities may be held liable under section 1983 only for “acts which the municipality has officially sanctioned or ordered.” 475 U.S. at 480, 106 S.Ct. at 1298; 2) only those municipal officials who have “final policymaking authority” may subject the government to section 1983 by their actions. Id. at 483, 106 S.Ct. at 1300; 3) whether a particular official has “final policymaking authority” is a question of state law. Ibid.; 4) the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city’s business. Id. at 482-83, and n. 12, 106 S.Ct. at 1299-1300, and n. 12. Noting that the identification of policymaking officials is a question of state law, and not a question of fact in the usual sense, the Praprotnik opinion stated that:
The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. Among the many kinds of municipal corporations, political subdivisions, and special districts of all sorts, one may expect to find a rich variety of ways in which the power of government is distributed among a host of different officials and official bodies. See generally C. Rhyne, The Law of Local Government Operations §§ 1.3-1.7 (1980). Without at *888 tempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government’s business.
108 S.Ct. at 924-25.
The Court concluded that Praprotnik had failed to establish the existence of an unconstitutional municipal policy or show that the employees who had engineered his professional demise were municipal policymakers. On the contrary, the Court observed that: 1) the City Charter expressly authorized the Civil Service Commission to set and review employment policy as well as to correct improper personnel decisions; 2) Praprotnik had obtained at least partial relief through his several appeals to the Civil Service Commission; and 3) there was no indication that the Commission itself had ever authorized or permitted retaliatory transfers or layoffs. Under these circumstances the Court held that an unconstitutional municipal policy had not been demonstrated:
Simply going along with discretionary decisions made by one’s subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official-manifested a “custom or usage” of which the supervisor must have been aware. See supra, [108 S.Ct.], at 925. In both those cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower-ranking official. But the mere failure to investigate the basis of a subordinate’s discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate’s decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee’s decision as if it were a reflection of municipal policy.
108 S.Ct. at 927.
THIS CASE
We believe the analysis and holding in Praprotnik supports the trial court’s ruling here. This case presents a classic example of the “rich variety of ways in which the power of government is distributed among a host of different officials and official bodies.” Praprotnik at 925. The regulation of building and development in Florida is divided up in a complicated scheme among state, county and municipal governments. Development projects in Broward County are generally governed by the detailed provisions of the South Florida Building Code although there are additional layers of state, county and municipal laws and regulations that might affect or control a particular issue in dispute between a developer and the governmental body involved. The Building Code was enacted by the Florida Legislature and incorporated into the Broward County Charter to achieve both uniformity and quality in the building industry, and it contains a comprehensive and detailed government policy regulating construction in Broward County and the city of Coconut Creek. There is no dispute that its provisions govern the construction project in question herein.
The Building Code is similar, in our view, to the Civil Service regulations discussed in Praprotnik. As was the case with employment policy in Praprotnik, the city’s policy on construction projects is set out in the Building Code. The appointment and duties of a building official and provisions for review of his decisions by the Board of Rules and Appeals are specifically enumer *889 ated in the Building Code.[2] It is the Building Code, rather than city officials, that grants and governs the authority of the building official to impose or lift stop-work orders. The Code not only provides guidance, it also provides for review of the building official’s decisions, thus specifically denying him “final policy-making authority” over construction projects. Hence, in our view, the building official does not possess the kind of policy-making authority that would make the city liable for his actions under Praprotnik. We also note that there is no complaint here about the policy set out in the Code. Indeed, it is the alleged failure of the building official to comply with the Code that constitutes the basis of appellants’ grievance.
We also do not believe that the action of other city officials in “simply going along” with the building official’s decision on the stop-work orders constituted a delegation of policy-making authority sufficient to make the city liable under section 1983 as construed in Praprotnik. As noted above, the city’s policy is contained in the Building Code, and the Code itself provides for another body’s supervision of the building official’s actions. There was no claim or evidence presented at trial of prior instances of abuse of authority that would demonstrate a de facto policy of the city sanctioning misconduct by the building official. Thus, although it appears that the building official may have acted improperly, it does not appear that his actions were related to any improper policy of the city, nor were they part of a series of wrongful acts tacitly approved as policy by the city. Under these circumstances we believe the trial court properly concluded that the city was not responsible under section 1983 for the building official’s conduct.
SET-OFF CLAIM
We believe this issue is rendered moot by our disposition of this appeal on its merits. Nevertheless, we find that the imposition of a set-off was correct. Prior to trial Raben-Pastel obtained settlements from the various engineers and architects named as codefendants whose negligent design created the defective construction which resulted in the stop work orders issued by appellees. In announcing the settlement in open court, appellants’ counsel stated that “payment of this figure will result in general releases being exchanged for any and all claims between the parties.” The settlement was not read into the record nor was it otherwise admitted into evidence.
In the Third Amended Complaint, before setting forth separate causes of action against each defendant, Raben-Pastel in its introductory paragraph alleged that “Plaintiff sues Defendants, jointly, severally, and individually_” While they did not include the settling defendants in their section 1983 action against the City and Cowley, appellants included claims for post-July 2nd damages in the claims they filed against the settling defendants on the theory that those defendants were liable for those damages under the principle of proxi *890 mate cause. In ordering the set-off, the trial court relied on: 1) Raben-Pastel’s complaint which claimed post-July 2nd damages from the settling defendants, for which the settling defendants were liable under the principle of proximate cause; and 2) the fact that the settlements did not apportion between damages occurring before and those which occurred after July 2, 1981.
Appellants argue that the trial court erred in awarding the set-off because ap-pellees failed to prove that they shared a common liability to the plaintiff with the parties who had previously settled. Appellants cite Dobson v. Camden, 705 F.2d 759 (1983), aff'd, 725 F.2d 1003 (5th Cir.1984) (en banc) to support the contention that set-off was improperly awarded here. In that case Dobson sued Denny’s Restaurant for false arrest and malicious prosecution after restaurant personnel summoned police when Dobson spent too much time in the bathroom. He also sued the City of Houston whose police officers beat him both before and after they removed him from Denny’s. In holding that his settlement with Denny’s should not be set-off against his verdict against the police officers, the Fifth Circuit noted that there was no joint liability between Denny’s and the police officers for the injuries suffered by Dobson. “[N]o theory of tort liability exists to impose responsibility on Denny’s for the excessive force used by Camden. Conspiracy between Denny’s personnel and the police officers to inflict bodily injury on Dobson was not alleged and is not suggested.” Dobson, at 1005. The key distinction in this case is that there was a claim of joint liability against the appellees and the settling defendants for the failure of the project. Theoretically, a jury could have placed the blame on all the defendants for the project’s demise.
Appellants further submit that set-off was unnecessary because the jury verdict already reflected the apportionment of damages between the negligent settling defendants and appellees. While it is true that the judge instructed the jury to award only those damages against Cowley and the City which arose from their post-July 2nd conduct, the problem is that there was no apportionment of damages in the settlement with the other defendants, who were alleged to also be responsible for the subsequent financial ruin of the project. Under these circumstances we do not believe the trial court erred in granting the City and Cowley a set-off.
Accordingly, we affirm the actions of the trial court.
DELL and STONE, JJ., concur.

. The trial court cited Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and City of Lake Worth v. Walton, 462 So.2d 1137 (Fla. 4th DCA 1984) as authority for its ruling. In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the court held that an action by a state prisoner to recover for a hobby kit ordered by the prisoner that was allegedly lost by prison officials constituted a procedural due process claim. The Supreme Court held that because the state provided a claims procedure by which the prisoner could have obtained compensation for his loss and because the loss had resulted from a random and unauthorized act by a prison employee, the prisoner had failed to show a violation of due process cognizable under section 1983. We followed Parratt in City of Lake Worth v. Walton, where we held that a police officer who was afforded means under state law for redress of the wrongful failure of his employer to promote him was not entitled to proceed under section 1983.

. 201.1(a) BUILDING OFFICIAL
(1) APPOINTMENT, POWERS AND DUTIES OF A BUILDING OFFICIAL: There shall be appointed by the appointing authority a person qualified as set forth in Sec. 201 to serve as building official. The building official shall be the principal enforcing officer of this Code and it shall be his duty and responsibility to coordinate the work of all subordinate inspectors. The building official shall be subject to the powers vested in the Board of Rules and Appeals as set forth in Sec. 203 of this Code.
(4) STOP WORK ORDERS: Whenever any building work is being done contrary to the provisions of this Code or is being done in an unsafe or dangerous manner, the building official or his duly authorized representative may order such work stopped, or may order the person or persons engaged in the doing or causing of such work to be done and such persons shall immediately stop such work until arrangements, in compliance with the provisions of this Code and satisfactory to the building official or his duly authorized representatives have been made, at which time he may authorize the work to proceed.
203.5 POWERS (b)(1) The board shall have the power to affirm, modify or reverse the decision of the Building Official wherein such decision is on matters regulated by this Code.
203.7 COURT REVIEW: (a) Any person aggrieved by a decision of the Board of Rules and Appeals, whether or not a previous party to the decision, may apply to the appropriate court for a writ of certiorari to correct errors of law of such decision.