573 So.2d 298 (1990)
RABEN-PASTAL, Etc., et al., Petitioners,
v.
CITY OF COCONUT CREEK, Florida, Etc., et al., Respondents.
No. 74406.
Supreme Court of Florida.
December 6, 1990.
Rehearing Denied February 12, 1991.
*299 Byron G. Petersen and Marlene K. Silverman of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Fort Lauderdale, and Sam Daniels of Daniels & Hicks, P.A., Miami, for petitioners.
Robert H. Schwartz of Gunther & Whitaker, P.A., Fort Lauderdale, for respondents.
KOGAN, Justice.
We have for review Raben-Pastal v. City of Coconut Creek, 545 So.2d 885 (Fla. 4th DCA 1989), in which the district court on rehearing certified the following as a question of great public importance:
May a municipality be held liable to an owner-developer of a building project under 42 U.S.C. section 1983 for the wrongful refusal of the municipality's chief building official to withdraw a stop-work order on the project?
Id. at 890. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the negative as to this case[1] and approve the decision of the district court.
In 1981, petitioners Raben-Pastal began construction of a residential project in the City of Coconut Creek, Florida. After cracks appeared in several of the buildings and remedial efforts failed to eliminate them, the city's chief building officer, James Cowley, issued an official stop-work order pending implementation of agreed repairs. An engineering firm retained by the city approved repair plans to correct the cracks. On July 2, 1981, the engineering firm officially certified to the city that the repairs were complete. Cowley, however, refused to lift the stop-work order for the next five months due to his concerns that other structural defects might exist. During this time, petitioners twice filed appeals to the Broward County Board of Rules and Appeals in addition to filing a petition for writ of mandamus in the United States District Court in an effort to have the stop-work order lifted.
During the five-month interim between certification and lifting of the stop-work order, media coverage of the dispute suggested that the unoccupied, unfinished *300 buildings were unsafe. The project eventually was closed down by petitioners. As a result, petitioners sued the City of Coconut Creek and James Cowley, as chief building official, under 42 U.S.C. § 1983 for violation of its civil rights.[2]
At trial a jury returned a verdict in favor of petitioners in the amount of $2.5 million. In a special verdict, the jury concluded that Cowley intentionally violated and/or misapplied the provisions of the South Florida Building Code or acted in an arbitrary, capricious, and unreasonable manner in refusing to lift the stop-work order. The jury further found that Cowley's actions represented an official policy, custom, or practice of the City of Coconut Creek. In post-trial proceedings the trial court set aside the jury verdict and entered judgment in favor of Cowley and the City of Coconut Creek.[3] Relying on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the trial court held that petitioners had an adequate remedy at state law and therefore were precluded from recovery under § 1983.
On appeal, the Fourth District Court of Appeal held that under the circumstances, the trial court properly concluded that the City of Coconut Creek was not responsible under § 1983 for the building official's conduct. In reaching its decision, the appellate court relied on Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), two cases addressing municipal liability under § 1983. The fourth district held that the building official did not possess the type of policy-making authority necessary to make the City of Coconut Creek liable for his actions under the federal statute. On rehearing, the appellate court certified the question we now have before us.
In Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), the Supreme Court first determined that a municipality or other body of local government was subject to liability under § 1983. For liability to attach, it must be shown that a government official or employee caused a deprivation of one's constitutional rights by acting pursuant to official government policy. A local government also could be found liable if a violation of constitutional rights was caused by a government official or employee acting in accordance with governmental custom even though the custom had not been formally sanctioned or ordered. Id. at 690-691, 98 S.Ct. at 2035-2036.
Later, in Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court addressed the question of when a decision on a single occasion is sufficient to establish an unconstitutional policy for which the city could be held liable. In answering this question, the Court set forth the following guidelines: 1) the municipality must have officially sanctioned or ordered the action; 2) the action must have been taken by a municipal official with final policy-making authority, and 3) the challenged action must have been taken pursuant to a policy adopted by those officials responsible under state law for establishing policy in that area of the government's business. Id. at 481-483, 106 S.Ct. at 1299-1300. The Court went on to emphasize that determining whether an official has final policy-making authority is a question of state law. Id. at 483, 106 S.Ct. at 1300.
*301 In an attempt to clarify its prior holding in Pembaur, the Supreme Court revisited the Pembaur issue in the case of City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Praprotnik was an architect employed by the City of St. Louis in a management-level position who, after appealing a temporary suspension to the city's civil service commission, was transferred to a clerical position in another city agency and subsequently laid off. Praprotnik brought a § 1983 action against the city, claiming his first amendment rights were violated through retaliatory actions taken in response to his appeal and that he was denied due process by the layoff. He prevailed in the trial court, and the Eighth Circuit Court of Appeals affirmed, finding that the jury had implicitly determined Praprotnik's layoff stemmed from an unconstitutional city policy. Praprotnik v. City of St. Louis, 798 F.2d 1168 (8th Cir.1986). The court of appeals defined a "policy-maker" as one whose employment decisions are final in the sense that the decisions are not subject to de novo review by higher-ranking officials. Id. at 1175. Thus, the court concluded that the City of St. Louis could be held liable under § 1983 for personnel decisions made by city supervisors. Id.
The Supreme Court reversed and attempted to clarify the principles established in Pembaur. The Court focused on the role of state law in identifying which official or body has the responsibility for making law or setting policy in the various areas of a local government's business and made it clear that in most instances state law would direct a court to the proper authority. City of St. Louis v. Praprotnik, 485 U.S. at 124-126, 108 S.Ct. at 924-925. In any event, the question is one of state and local law to be determined by the trial court, not a question of fact to be determined by the jury. Id. at 124, 108 S.Ct. at 924. Before concluding that Praprotnik had failed to establish an unconstitutional policy or to demonstrate that the employees responsible for the layoff were municipal policy-makers, the Supreme Court emphasized that simply going along with discretionary decisions made by subordinates would not be viewed as a delegation to them of the authority to make policy. Id. at 130, 108 S.Ct. at 927. Rather, for a delegation of policymaking authority to have occurred, it must be clear that a subordinate's discretionary decision was not constrained by official policies and was not subject to review. Id. at 127, 108 S.Ct. at 926.
With these principles in mind, the district court examined the regulation of building and development projects in Broward County and found that these projects generally are governed by the South Florida Building Code.[4] Section 201.1(a)(1), South Florida Building Code, sets forth the powers and duties of the building official. This section designates the building official as the principal-enforcing officer of the Building Code and as coordinator of work performed by all subordinate inspectors. The Building Code does vest the building inspector with the power to impose stop-work orders when the building official or an authorized representative determines work is being performed contrary to the provisions of the Code or in an unsafe or dangerous manner. § 201.1(a)(4), South Florida Building Code. Furthermore, once building work is in compliance with the Building Code to the building official's satisfaction, the official may lift the stop-work order and authorize the work to proceed. Id. However, the Building Code also provides that any decision made by the building official on matters regulated by the Code is subject to review by the Board of Rules and Appeals upon written application to the Secretary of the Board.[5] After reviewing *302 the applicable provisions of the Building Code, we believe the district court correctly concluded that the building official did not possess the type of policy-making authority that would make the City of Coconut Creek liable for his actions.
Imposing and lifting stop-work orders are matters regulated by the South Florida Building Code. Therefore, a decision by the building official affecting a stop-work order is not final because it is subject to review by the Board. As the district court noted, the provisions of the Building Code set forth the City's policy for regulating construction. Not only does the Code provide guidelines for those responsible for its implementation, but more importantly, it specifically denies the building official final policy-making authority over construction projects through the review process. Under the dictates of Praprotnik, the building official does not meet the criteria of a final policy-maker.
We recognize that under the Building Code the building official is left with some discretion when making decisions. Because each construction project is unique, the building official's discretion is necessary to address varying circumstances likely to arise with respect to a particular project. However, this is not to say that the building official's performance of his duties is tantamount to final policy-making authority. Having the authority to make discretionary decisions is not the same as having the authority to make policy. The building official's decisions are not final and unreviewable. Additionally, we fail to see how the building official's decision not to lift the stop-work order, made specifically in response to the particular circumstances of petitioners' construction project, represents an official policy formulated by the City of Coconut Creek. As the district court concluded:
We also do not believe that the action of other city officials in "simply going along" with the building official's decision on the stop-work orders constituted a delegation of policy-making authority sufficient to make the city liable under section 1983 as construed in Praprotnik. As noted above, the city's policy is contained in the Building Code, and the Code itself provides for another body's supervision of the building official's actions. There was no claim or evidence presented at trial of prior instances of abuse of authority that would demonstrate a de facto policy of the city sanctioning misconduct by the building official. Thus, although it appears that the building official may have acted improperly, it does not appear that his actions were related to any improper policy of the city, nor were they part of a series of wrongful acts tacitly approved as policy by the city. Under these circumstances we believe the trial court properly concluded that the city was not responsible under section 1983 for the building official's conduct.
Raben-Pastal v. City of Coconut Creek, 545 So.2d at 889.
Thus, unless it can be demonstrated that the guiding principles established in Praprotnik apply to action taken by a municipal official or employee, the municipality cannot be held liable for the conduct under 42 U.S.C. § 1983. Petitioners have failed to show that Cowley possesses final authority to establish municipal policy with respect to the alleged constitutional violation. Under the provisions of the South Florida Building Code, Cowley does not have final policy-making authority over the action alleged to have caused the constitutional violation nor was he carrying out an official policy of the city when he denied petitioner's request to lift the stop-work *303 orders.[6] Accordingly, we answer the question as to this case in the negative and approve the opinion of the Fourth District Court of Appeal.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT and GRIMES, JJ., concur.
NOTES
[1] Although the question presented is broadly phrased, we limit our discussion to the facts of this case. Whether or not a municipality would be subject to liability under 42 U.S.C. § 1983 under other circumstances than those presented here is a matter left for another day.
[2] Petitioners also sued those responsible for the cracks in the buildings for design negligence. Prior to trial the parties settled for $1,051,000.00.
[3] In City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988), the Supreme Court has stated that while identification of policymaking officials is a question of state law, it is not a question of federal law and not a question of fact in the usual sense. Id. at 124, 108 S.Ct. at 924. A jury is not to be given the discretion to determine which officials hold senior-level positions in the government such that their actions can be said to represent a decision of the government itself. Id. at 126, 108 S.Ct. at 925. The question is a legal matter to be resolved by the trial court before the case is submitted to the jury. Thus the trial court was correct to set aside that portion of the jury verdict and make this determination itself.
[4] The district court noted that the South Florida Building Code was enacted by the Florida Legislature and contains comprehensive and detailed provisions for regulating construction. The Building Code was incorporated into the Broward County Charter to achieve uniformity and quality in the building industry. The parties do not dispute that its provisions govern Raben-Pastal's project.
[5] Moreover, the Building Code recognizes that alternatively or in addition to the above stated procedure, an aggrieved party may seek action in the form of injunctive-relief proceedings or other appropriate legal proceedings in a court of competent jurisdiction. § 203.4(g), South Florida Building Code. In the event an aggrieved party first seeks review of the building official's decision by the Board of Rules and Appeals and receives an unfavorable result, that party then may apply to the appropriate court for a writ of certiorari. § 203.7(a), South Florida Building Code. However, application for review must be made to the proper court within five days after the decision of the Board. § 203.7(b), South Florida Building Code.
[6] We decline to address the other issues raised by the parties to this action because those issues lie beyond the scope of the certified question.