390 S.E.2d 796

**BOARD OF EDUCATION OF McDOWELL COUNTY**

v.

**ZANDO, MARTIN & MILSTEAD, INC.**

No. 18773.

Supreme Court of Appeals of West Virginia.

Feb. 22, 1990.

---

598

Daniel R. Schuda, Steptoe & Johnson, Charleston, for Zando, Martin & Milstead, Inc.

Stephen R. Crislip, William J. Powell, Jackson & Kelly, Charleston, for the Bd. of Educ. of McDowell County.

MILLER, Justice:

In this appeal, we address the validity of the dismissal of a civil defendant's claim for contribution against a joint wrongdoer who has settled with the plaintiff. We also address the right of the nonsettling defendant to have the verdict reduced to reflect such settlements. We conclude that the Circuit Court of Kanawha County properly dismissed the contribution claims of the defendant below, Zando, Martin & Milstead, Inc. (ZMM), but erred in refusing to grant a verdict credit for settlements between the plaintiff below, the Board of Education of McDowell County (Board), and other defendants.

In January, 1975, the Board entered into a contract with ZMM, an architectural and engineering firm located in Charleston, Kanawha County, to design and supervise the construction of Mount View High School near Welch, McDowell County. At the recommendation of ZMM, the Board subsequently hired, by separate contracts, the H.C. Nutting Company (Nutting) to do soil testing at the proposed school site and the Corte Company, Inc. (Corte), a general contractor, to perform most of the construction.

Cracks were found in the building almost as soon as the school opened in September 1978, and more appeared as time went on. In January 1982, a steel beam supporting a classroom fell. In July 1983, the south wall of the gymnasium suffered a structural failure during a windstorm.

On February 22, 1984, the Board filed an action for damages in the Circuit Court of Kanawha County, alleging that ZMM had been negligent and had breached its contracts with the Board by failing properly to design and supervise the construction of the building. ZMM denied the allegations and subsequently filed a third-party complaint alleging that any damages suffered by the Board were due to the negligence of Nutting and Corte. The Board was then

granted leave to file an alternative complaint against Nutting and Corte, charging each with breach of contract and with negligence.

In April 1987, the Board settled with Corte for $600,000. Corte obtained a release from liability and was dismissed from the litigation. The trial court also dismissed with prejudice ZMM's cross-claims [1] against Corte on the ground that the settlement and release barred any further proceedings against Corte arising from the same transaction. The Board proceeded to trial against Nutting and ZMM several weeks later. In the course of trial, however, the Board settled with Nutting for $30,000, and Nutting was dismissed from the action. The trial judge also dismissed ZMM's cross-claims against Nutting.

The case was submitted to the jury, and, on May 21, 1987, a verdict was returned awarding the Board $1,000,000 in compensatory damages. Interrogatories subsequently submitted to the jury indicated that the verdict was predicated on findings of both negligence and breach of contract. The jury allocated the negligence involved as follows:

| " 5% | McDowell County Board of Education |
| --- | --- |
| 15% | Zando, Martin & Milstead, Inc. |
| 75% | Corte Company, Inc. |
| 0% | H.C. Nutting Company |
| 5% | Others" |

No punitive damages were awarded.

Following the verdict, ZMM sought to have the Nutting and Corte settlements deducted from the verdict. The Board, however, elected to have judgment rendered on the contract claim. The trial court refused to grant ZMM a credit for

the Nutting and Corte settlements and, by order dated October 15, 1988, entered judgment against ZMM for the full $1,000,000.

## I.

### A. *The Right of Contribution*

■ ZMM first argues that the trial court's dismissal of its cross-claims against Corte and Nutting impermissibly cut off its right to contribution. The right of contribution arises from liability for a joint wrong committed by two or more parties against the plaintiff. We explained the doctrine of contribution in Syllabus Point 4, in part, of *Sydenstricker v. Unipunch Prods., Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982), as follows:

> "The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation."

*See Estate of Bayliss v. Lee*, 173 W.Va. 299, 315 S.E.2d 406 (1984).

■ In *Haynes v. City of Nitro*, 161 W.Va. 230, 240 S.E.2d 544 (1977), we traced our prior cases in this area and concluded that a defendant in a negligence action has a right in advance of judgment to join a joint tortfeasor based on a cause of action for contribution. We termed this an "inchoate right to contribution" in order to distinguish it from the statutory right of contribution after a joint judgment conferred by W.Va.Code, 55–7–13 (1923).[2] 161 W.Va. at 234, 240 S.E.2d at 547.

■ In *Sydenstricker*, 169 W.Va. at 452, 288 S.E.2d at 518, we reaffirmed that this inchoate right of contribution " 'is designed to moderate the inequity which existed in our law that enabled the plaintiff to cast

---

1. As we earlier stated, ZMM initially brought Corte and Nutting into the litigation by third-party complaint. *See* W.Va.R.Civ.P. 14. When the Board subsequently amended its complaint to name Corte and Nutting as defendants, ZMM, in its answer, filed cross-claims against them on the same grounds. *See* W.Va.R.Civ.P. 13(g). The law discussed herein is equally applicable to both third-party complaints and cross-claims.

2. W.Va.Code, 55–7–13, provides: "Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of such judgment is made by any one or more of such persons, the others shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu."

the entire responsibility for an accident on one of several joint tortfeasors by deciding to sue only him.'" *Quoting Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 354, 256 S.E.2d 879, 886 (1979). This right of the plaintiff to sue one or more joint tortfeasors is a companion principle of the doctrine of joint and several liability, which permits a plaintiff to recover the entire judgment from any joint judgment debtor. As we explained in Syllabus Point 2 of *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982):

"This jurisdiction is committed to the concept of joint and several liability among joint tortfeasors. A plaintiff may elect to sue any or all of those responsible for his injuries and collect his damages from whomever is able to pay, irrespective of their percentage of fault. Our adoption of a modified rule for contributory negligence in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), did not change our adherence to joint and several liability."

In *Sydenstricker*, 169 W.Va. at 452, 288 S.E.2d at 518, we explained the scope of our inchoate right of contribution as follows:

"Our right of contribution before judgment is derivative in the sense that it may be brought by a joint tortfeasor on any theory of liability that could have been asserted by the injured plaintiff. However, it is clear that the amount of recovery in a third-party action based on contribution is controlled by the amount recovered by the plaintiff in the main action."

Thus, the right of inchoate contribution is not confined only to cases of joint negligence. Instead, it arises under any theory of liability which results in a common obligation to the plaintiff. Where, as here, the plaintiff seeks damages for a breach of contractual obligations, the named defendant is entitled to assert claims for contribution against other parties liable to the plaintiff for the same injury even though the defendant was not a party to the contract between the plaintiff and the other parties.[3] *See* 18 Am.Jur.2d *Contribution* § 10 (1985). The touchstone of the right of inchoate contribution is this inquiry: Did the party against whom contribution is sought breach a duty to the plaintiff which caused or contributed to the plaintiff's damages?

The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice—to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts. *See Bowman v. Barnes*, 168 W.Va. 111, 282 S.E.2d 613 (1981). Moreover, as we have already indicated, joinder of contribution claims serves to ensure that those who have contributed to the plaintiff's damages share in that responsibility. We have also provided a method of apportioning the damages among the defendants according to fault in negligence cases.[4] Finally, while the right of contribution is designed to promote equality among defendants, it is not auto-

**3.** The concept of contribution is not foreign to those whose joint obligations arise by contract. W.Va.Code, 55-7-13, suggests that a right of contribution after a joint judgment was recognized at common law in contract actions. For the text of W.Va.Code, 55-7-13, see note 2, *supra*. There is no question that this was the prevailing rule at common law. *E.g., Estate of Bayliss v. Lee, supra; Cost v. MacGregor*, 124 W.Va. 204, 19 S.E.2d 599, 140 A.L.R. 882 (1942); *Gooch v. Gooch*, 70 W.Va. 38, 73 S.E. 56 (1911). *See generally* 18 Am.Jur.2d *Contribution* § 32 (1985).

It also appears that an inchoate right of contribution could be asserted in equity on a joint contract obligation. 18 Am.Jur.2d *Contribution* § 86 (1985). Undoubtedly, the earlier unwillingness of courts to permit such a claim at law arose from the rigidity of the common law forms of pleading. With the merger of law and equity into one form of civil action, such procedural impediments no longer exist. *See* W.Va. R.Civ.P. 2.

**4.** After discussing the question at some length, we concluded in Syllabus Point 3 of *Sitzes v. Anchor Motor Freight, Inc., supra*: "As between joint tortfeasors, a right of comparative contribution exists *inter se* based upon their relative degrees of primary fault or negligence."

matic and must be properly invoked to be preserved. *See Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. at 713, 289 S.E.2d at 688.

### B. *Termination of Contribution Rights by Settlement*

■ Having spoken generally of the right to contribution, we must now discuss the law surrounding the termination of such a right when a joint wrongdoer settles with the plaintiff. Although we have never discussed this issue at length, we have developed, independently of any assertion of contribution, a practice of allowing the defendant against whom a verdict is rendered to reduce the damages to reflect any partial settlement the plaintiff has obtained from a joint tortfeasor. As we stated in Syllabus Points 1 and 2 of *Tennant v. Craig,* 156 W.Va. 632, 195 S.E.2d 727 (1973):

> "1. 'Where a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong.' Point 2, Syllabus, *Hardin v. The New York Central Railroad Company,* 145 W.Va. 676 [116 S.E.2d 697 (1960)].
>
> "2. Partial satisfaction of the injured person by one joint tortfeasor is a satisfaction, *pro tanto,* as to all.' Point 5, Syllabus, *New River & Pocahontas Consolidated Coal Company v. Eary,* 115 W.Va. 46 [174 S.E. 573 (1934)]."

This practice is premised on the principle that a plaintiff is entitled to one, but only one, complete satisfaction for his injury. *Thornton v. Charleston Area Medical Center,* 158 W.Va. 504, 213 S.E.2d 102 (1975); *Cox v. Turner,* 157 W.Va. 802, 207 S.E.2d 152 (1974); *Tennant v. Craig, supra; New River & Pocahontas Consol. Coal Co. v. Eary, supra; Bloss v. Plymale,* 3 W.Va. 393 (1869).

These cases implicitly stand for the proposition that one who settles with the plaintiff prior to verdict is discharged from any liability for contribution.[5] This is the approach taken by both the Uniform Contribution Among Tortfeasors Act, 1955, (UCATA)[6] and the Uniform Comparative Fault Act (UCFA).[7]

Such a rule furthers the strong public policy favoring out-of-court resolution of disputes, which we stated in Syllabus Point 1, in part, of *Sanders v. Roselawn Memorial Gardens,* 152 W.Va. 91, 159 S.E.2d 784 (1968): "The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]" *See State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 320 S.E.2d 345 (1984); *Floyd v. Watson,* 163 W.Va. 65, 254 S.E.2d 687 (1979); *Janney v. Virginian Ry. Co.,* 119 W.Va. 249, 193 S.E. 187 (1937). As the California Court of Appeals stated in *Stambaugh v. Superior Court,* 62 Cal.App.3d 231, 236, 132 Cal.Rptr. 843, 846 (1976):

**5.** This result is statutorily mandated in medical malpractice cases. W.Va.Code, 55–7B–9(c) (1986), provides, in pertinent part: "No right of contribution exists against any defendant who entered into a good faith settlement with the plaintiff prior to the jury's report of its findings to the court or the court's findings as to the total dollar amount awarded as to damages."

**6.** Section 4 of the UCATA provides:

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the

release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." 12 U.L.A. at 98 (1975).

**7.** Section 6 of the UCFA provides:

"A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2." 12 U.L.A. at 52 (Supp.1989).

"Few things would be better calculated to frustrate this policy, and to discourage settlement of disputed tort claims, than knowledge that such a settlement lacked finality and would but lead to further litigation with one's joint tortfeasors, and perhaps further liability." "No defendant wants to settle when he remains open to contribution in an uncertain amount, to be determined on the basis of a judgment against another in a suit to which he will not be a party." Unif. Contribution Among Tortfeasors Act, 1955, § 4(b), comment, 12 U.L.A. at 99. *See Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill. Dec. 654, 472 N.E.2d 791 (1984).

From a practical standpoint, the reduction of the verdict to reflect partial settlements counterbalances the loss of the right of contribution, since the remaining defendants, who would otherwise have been entitled to such right, obtain the benefit of the settlement. *See Dunn v. Sears, Roebuck & Co.*, 645 F.2d 511 (5th Cir.1981); *Poupore v. Suguin*, 82 Misc.2d 1, 367 N.Y.S.2d 950 (1975). Verdict reduction also allocates liability to some extent among those jointly responsible for the plaintiff's injury. The settling defendant is, in effect, paying a share of liability on the verdict. At the same time, the use of the verdict credit ensures against double recovery by the plaintiff. *See Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761 (Alaska 1973); *Lafayette v. Los Angeles County*, 162 Cal. App.3d 547, 208 Cal.Rptr. 668 (1984); *Utter v. South Brookhaven Obstetric & Gynecological Assocs., P.C.*, 135 A.D.2d 811, 522 N.Y.S.2d 915 (1987). *See generally* Restatement (Second) of Torts § 885(3) comment f (1979).

These considerations have led most jurisdictions recognizing a right of contribution to conclude that a nonsettling defendant's right of contribution from a joint wrongdoer is extinguished by the plaintiff's settlement with and release of such wrongdoer prior to verdict. *See, e.g., Gomes v. Brodhurst*, 394 F.2d 465 (3d Cir.1967); *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182,

578 P.2d 899 (1978); *State ex rel. Deere & Co. v. District Court*, 224 Mont. 384, 730 P.2d 396 (1986); *Theobald v. Angelos*, 44 N.J. 228, 208 A.2d 129 (1965); *Charles v. Giant Eagle Mkts.*, 513 Pa. 474, 522 A.2d 1 (1987); *Kirby Bldg. Sys. v. Mineral Explorations Co.*, 704 P.2d 1266 (Wyo.1985). We believe this approach is consistent with our principles regarding settlements and allocation of liability.

Some jurisdictions have recognized a limited exception to the finality of such settlements where the agreement is collusive in nature by refusing to cut off the nonsettling defendants' right to contribution unless the settlement has been made in "good faith." *See Stifle v. Marathon Oil Co.*, 684 F.Supp. 552 (S.D.Ill.1988), *rev'd on other grounds*, 876 F.2d 552 (7th Cir.1989) (applying Illinois law); *Torres v. State*, 67 A.D.2d 814, 413 N.Y.S.2d 262 (1979). The determination of whether a settlement was made in good faith does not necessarily turn on whether the amount of the settlement accurately reflects the jury's ultimate apportionment of liability. The Appellate Court of Illinois recently stated in *Jachera v. Blake–Lamb Funeral Homes, Inc.*, 189 Ill.App.3d 281, 288, 136 Ill.Dec. 790, 795, 545 N.E.2d 314, 319 (1989):

"Since damages are often speculative and liability uncertain, the amount of a settlement legitimately might be far different from a damage award which results from full litigation. ([*O'Connor v. Pinto Trucking Serv.*, 149 Ill.App.3d 911, 103 Ill.Dec. 242, 501 N.E.2d 263 (1986)]). An ensuing jury verdict is not necessarily an accurate measure of good faith in a settlement made prior to trial; at the time of the settlement, it is an unknown factor, so that any analysis based on the subsequent verdict necessarily relies on hindsight. ([*Lowe v. Norfolk & W. Ry. Co.*, 124 Ill.App.3d 80, 79 Ill.Dec. 238, 463 N.E.2d 792 (1984)])."

*Accord Noyes v. Raymond*, 28 Mass.App. 186, 548 N.E.2d 196 (1990). As we implicitly recognized in the context of "Mary Carter" agreements,[8] the chief consideration is

---

**8.** In such a settlement, the settling defendant agrees to help the plaintiff under the following terms:

whether the settlement arrangement substantially impaired the remaining defendants from receiving a fair trial. *State ex rel. Vapor Corp. v. Narick,* 173 W.Va. at 773, 320 S.E.2d at 348. *See Grillis v. Monongahela Power Co.,* 176 W.Va. 662, 346 S.E.2d 812 (1986).

■ The good faith test carries its own safeguards. It is highly unlikely that a plaintiff will make a minimal settlement with a defendant who has the financial ability to pay and whose liability is substantial. We, therefore conclude that a party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution. In this case, there is no suggestion that the settlements were not entered into in good faith. Accordingly, we cannot conclude that the trial court committed reversible error in dismissing with prejudice ZMM's cross-claims against Corte and Nutting for contribution.

## C. *Calculation of Verdict Credit*

We confirm our traditional practice of granting a nonsettling defendant a *pro tanto,* or dollar-for-dollar, credit for partial settlements against any verdict ultimately rendered for the plaintiff. *See Tennant v. Craig, supra; Butler v. Smith's Transfer Corp.,* 147 W.Va. 402, 128 S.E.2d 32 (1962). In *Bradley v. Appalachian Power Co.,* 163 W.Va. at 345, 256 S.E.2d at 886, we stated: "Our comparative negligence rule does not change the right of a joint tortfeasor to obtain a *pro tanto* credit on the plaintiff's judgment for monies obtained by the plaintiff in a settlement with another joint tortfeasor." (Citations omitted). The *pro tanto* verdict reduction method has also been

"(1) The agreeing defendant(s) must remain in the action in the posture of defendant(s); (2) The agreement must be kept secret; (3) The agreeing defendant(s) guarantee to the plaintiff a certain monetary recovery regardless of the outcome of the action; and (4) The agreeing defendant(s)' liability is decreased in direct proportion to the increase in the nonagreeing defendant(s)' liability." *Reager v. Anderson,* 179 W.Va. 691, 701, 371 S.E.2d 619, 629 (1988). (Footnote omitted).

approved in cases decided after our adoption of comparative negligence. *See Reager v. Anderson,* 179 W.Va. 691, 703, 371 S.E.2d 619, 632 (1988); *Groves v. Compton,* 167 W.Va. 873, 280 S.E.2d 708 (1981).

Our practice with regard to verdict reduction basically comports with Section 4 of the UCATA, which states that a prior settlement by one joint tortfeasor "reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater." [9] 12 U.L.A. at 98. Jurisdictions adhering to this approach assert that it (1) encourages the plaintiff to settle by guaranteeing that the portion of the verdict not paid by the settling defendant will be chargeable to the defendant against whom the verdict is returned and (2), at the same time, clearly furthers the strong public policy against the plaintiff recovering more than one complete satisfaction. *Tommy's Elbow Room, Inc. v. Kavorkian,* 754 P.2d 243 (Alaska 1988); *American Motorcycle Ass'n v. Superior Court, supra; Department of Transp. v. Webb,* 409 So.2d 1061 (Fla.App.1981), *modified on other grounds,* 438 So.2d 780 (Fla.1983); *Nobriga v. Raybestos–Manhattan, Inc.,* 67 Haw. 157, 683 P.2d 389 (1984); *Mayhew v. Berrien County Road Comm'n,* 414 Mich. 399, 326 N.W.2d 366 (1982); *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983); *State ex rel. Deere & Co. v. District Court,* 224 Mont. at 397, 730 P.2d at 405; *Kirby Bldg. Sys. v. Mineral Explorations Co.,* 704 P.2d at 1277.

We recognize that this model for verdict reduction does not take into account the settling party's actual degree of fault.[10]

9. For the complete text of Section 4 of the UCATA, see note 6, *supra.*

10. Section 2 of the UCFA provides for reduction of the verdict by the percentage of negligence the jury, in allocating fault among all of the responsible parties, attributed to the settlor. Jurisdictions adhering to this model do not require the settlement to be in "good faith." *See Gomes v. Brodhurst, supra; Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984).

However, the importance and accuracy of the jury's allocation of liability is necessarily undermined by the fact that the settling party, who is out of the case, is not present to defend himself.

■ We, therefore, conclude that the defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties. Those defendants against whom the verdict is rendered are jointly and severally liable to the plaintiff for payment of the remainder of the verdict. Where the relative fault of the nonsettling defendants has been determined, they may seek contribution among themselves after judgment if forced to pay more than their allocated share of the verdict.[11]

> The UCFA model has drawbacks, however. If the amount of the settlement is less than the settling party's *pro rata* share of the verdict, the plaintiff absorbs the loss. He cannot collect the difference from the remaining defendants, and they cannot be required to pay more than their individual allocate shares. This procedure essentially destroys the concept of joint and several liability. *Dobson v. Camden,* 705 F.2d 759 (5th Cir.1983); *American Motorcycle Ass'n v. Superior Court, supra; Glidden v. German,* 360 N.W.2d 716 (Iowa 1984); *State ex rel. Deere & Co. v. District Court,* supra. If, on the other hand, the plaintiff obtains an amount in settlement greater than the percentage of damages attributable to the settling party, he may keep the difference as a "windfall." The other parties must still pay their allocate shares of the verdict. This permits the plaintiff a recovery in excess of the jury verdict. *See Wadle v. Jones,* 312 N.W.2d 510 (Iowa 1981); *Kirby Bldg. Sys. v. Mineral Explorations Co., supra.*
> The perceived equities or inequities between these models, as well as other statutory variations, is a subject of ongoing academic debate. For a West Virginia sampling, see J. Stoneking, *Beyond* Bradley: *A Critique of Comparative Contribution in West Virginia and Proposals for Legislative Reform,* 89 W.Va.L.Rev. 167, 184–87 (1986); J. Lewin, *Comparative Negligence in West Virginia: Beyond* Bradley *to Pure Comparative Fault,* 89 W.Va.L.Rev. 1039, 1045–51 (1987). *See generally Reager v. Anderson,* 179 W.Va. at 703 n. 9, 371 S.E.2d at 631 n. 9.

**11.** In *Reager,* we recognized that a settling defendant who remains in the case is susceptible to contribution claims where his settlement was less than his allocate share of joint liability.

### D. *ZMM's Entitlement to Verdict Credit*

The Board's action against ZMM was based on two theories, i.e., breach of its architectural and engineering contract to design the building and to supervise the construction and negligence in supervising the work.[12] The same damages were proved under both theories. The jury was instructed on both theories[13] and returned interrogatories which supported both theories. The Board, after the verdict, elected to accept the verdict on the contract theory. Presumably, the Board believed that ZMM could not obtain the benefit of the Corte and Nutting settlements in the contract action because Corte and Nutting were not parties to the Board's contract with ZMM and vice versa. The trial court apparently adopted this view and held that ZMM was not entitled to a set off against the verdict reflecting the prior settlements.

179 W.Va. at 704, 371 S.E.2d at 632. In such a case, the settling defendant becomes bound by the joint judgment under W.Va.Code, 55–7–13. For the text of W.Va.Code, 55–7–13, see note 2, *supra.*

**12.** In Prosser & Keeton, *The Law of Torts* § 92 at 655 (5th ed. 1984), this rather telling observation is made:
> "The distinction between tort and contract liability, as between parties to a contract, has become an increasingly difficult distinction to make. It would not be possible to reconcile the results of all cases. The availability of both kinds of liability for precisely the same kind of harm has brought about confusion and unnecessary complexity. It is to be hoped that eventually the availability of both theories—tort and contract—for the same kind of loss with different requirements both for the claimant's *prima facie* case and the defendant's affirmative defenses will be reduced in order to simplify the law and reduce the costs of litigation."

**13.** The instructions advised the jury that the proper measure of compensatory damages under either theory was "the cost of repairing the defects proximately caused by the architect/engineer's negligence, if any, and/or breach of contract, if any[,]" plus "all other expenses stemming from the injury in accordance with the law, including the loss of use of the gym during the repair." The jury was also instructed that "damages for breach of contract are intended to put the non-breaching party in as good a position as it was as if the promises contained in the contract were kept." Although the issue of punitive damages was submitted to the jury, none were awarded.

We have already recognized that the right of inchoate contribution exists in both tort and contract cases. Our definition of the right of contribution in *Sydenstricker* makes no distinction among theories of recovery, but focuses on the common liability of the defendants for plaintiff's injuries. If those injuries arise from the combined actions of the defendants, they are jointly liable to the plaintiff and may seek inchoate contribution among themselves regardless of the theories of recovery asserted against them individually.

The right of contribution was not designed to provide a windfall for the plaintiff by permitting him to achieve a double recovery for the same injury. Our general law in this area is in line with the general law of damages elsewhere and is set out in Syllabus Point 7 of *Harless v. First Nat'l Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982):

> "It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories."

*See also Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988); *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987); *Flannery v. United States*, 171 W.Va. 27, 297 S.E.2d 433, 34 A.L.R.4th 281 (1982).

This rule of damages is independent of the right of contribution. In *Harless*, the plaintiff sought recovery for mental anguish and emotional distress as a result of a retaliatory discharge by his employer. He also had a second theory of recovery—the tort of outrageous conduct. The trial court permitted both theories to go to the jury, and the jury awarded separate amounts on both theories. We held that because both theories involved essentially the same items of damages, a duplicate recovery could not be made.

Other jurisdictions have recognized that a joint obligation may arise in both contract and tort, but give rise to a single damage recovery.[14] In *Town of Winnsboro v. Barnard & Burk, Inc.*, 294 So.2d 867 (La. App.), *writ refused*, 295 So.2d 445 (La. 1974), for example, an engineering firm and a testing laboratory tried to escape common liability for defects in the construction of a city street system on the ground that they had entered into separate contracts with the plaintiff city. While conceding that the defendants were not joint obligors, the court held:

> "It matters not that the obligation of the defendants to repair the damages and bear the loss arose from separate breaches of separate contracts to do separate things. The jurisprudence recognizes that solidary obligations may result even though the parties are bound under separate contracts and even though one party may be bound under contract and the other through some other basis of law." 294 So.2d at 886.

Where such joint obligation for damages is found, a credit is allowed for any settlement prior to verdict, as illustrated by *Kassman v. American Univ.*, 178 U.S.App. D.C. 263, 546 F.2d 1029 (1976). There, the Court of Appeals noted that the idea of a credit is premised on the principle that "[t]he office of compensatory damages is to make the plaintiff whole, but certainly not more than whole," and went on to say:

> "There is nothing in logic or precedent which requires limitation of the underlying principle to situations involving joint tortfeasors or to those involving unintentional torts; on the contrary, there is the soundest of reasons to indulge its operation wherever more than one is responsible for a single injury. Where there has been only one injury, the law confers only one recovery, irrespective of the multiplicity of parties whom or theories which the plaintiff pursues." 178

---

**14.** In Syllabus Point 1, in part, of *Gamble v. Main*, 171 W.Va. 369, 300 S.E.2d 110 (1983), we recognized that inherent in a construction contract is the implied warranty that it will be "constructed by the builder in a workmanlike manner."

U.S.App.D.C. at 267–68, 546 F.2d at 1033–34. (Footnotes omitted).

The court in *Kassman* found that regardless of the different theories and parties pursued by the plaintiff, "there was but one loss" and that "if the amount paid in settlement reimbursed Kassman for part of the loss established by the verdict, the judgment on that verdict should have been credited with the payment on settlement." 546 F.2d at 1035. *See Reliable Tire Distribs., Inc. v. Kelly Springfield Tire Co.,* 607 F.Supp. 361 (E.D.Pa.1985); *J.F. Equip., Inc. v. Owatonna Mfg. Co., Inc.,* 143 Ill. App.3d 208, 98 Ill.Dec. 394, 494 N.E.2d 516 (1986); *Laurendeau v. Kewaunee Scientific Equip. Corp.,* 17 Mass.App. 113, 456 N.E.2d 767 (1983), *review denied,* 390 Mass. 1106, 459 N.E.2d 824 (1984); *Great Northern Packaging, Inc. v. General Tire & Rubber Co.,* 154 Mich.App. 777, 399 N.W.2d 408 (1986); *Ross v. Holton,* 640 S.W.2d 166 (Mo.App.1982); *TSC Indus., Inc. v. Tomlin,* 743 S.W.2d 169 (Tenn.App. 1987). *See also* Restatement (Second) of Torts § 774A(2) (1979).

The same result was reached in a factual pattern closely analogous to the one here. In *Young Men's Christian Ass'n v. Midland Architects, Inc.,* 174 Ill.App.3d 966, 124 Ill.Dec. 468, 529 N.E.2d 288 (1988), the plaintiff brought suit for breach of contract and breach of warranties against the architects, the general contractor, and the manufacturer of a roof system installed on the plaintiff's building. Prior to trial, the contractor and manufacturer settled and were dismissed from the action. The case proceeded to trial against the architects on a breach of contract theory and resulted in a verdict in favor of the plaintiff. The architects then sought to have the verdict reduced by the amount of the pretrial settlements.

In ruling that the trial court erred in its manner of reducing the verdict, the Illinois appellate court relied on cases involving joint tortfeasors and stated:

"This is a case where the actions of all the defendants (the architects, the general contractor, and the roofing manufacturer) caused a single, indivisible injury to plaintiff as a result of the construction and installation of a defective roof.

\*   \*   .\*   \*   \*   \*

"The law is well settled that, where there is a single and indivisible injury, the damages are inseparable and any amounts received from any of the defendants must be deducted from the total damages sustained. (*Weaver v. Bolton* (1965), 61 Ill.App.2d 98, 209 N.E.2d 5.) Applicable to the case at bar is the holding in *Eberle v. Brenner* (1987), 153 Ill. App.3d 700, 702 [106 Ill.Dec. 144, 146, 505 N.E.2d 691, 693], where the court said:

'An injured person is entitled to one full compensation for his injuries, and a double recovery for the same injury is against public policy. [Citation.] Thus, a plaintiff who has recovered for his damages should have no basis to complain because a defendant benefited from a setoff.' "

174 Ill.App.3d at 970, 124 Ill.Dec. at 471, 529 N.E.2d at 291.

*See also Morley v. Cohen,* 888 F.2d 1006 (4th Cir.1989) (applying Maryland law); *Harris v. Union Elec. Co.,* 846 F.2d 482 (8th Cir.1988); *Raben–Pastal v. City of Coconut Creek,* 545 So.2d 885 (Fla.App. 1989); *Reeves v. Dixie Brick, Inc.,* 403 So.2d 792 (La.App.1981); *Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 398 N.Y.S.2d 401, 368 N.E.2d 24 (1977); *South Union, Ltd. v. George Parker & Assocs.,* 29 Ohio App.3d 197, 29 O.B.R. 241, 504 N.E.2d 1131 (1985); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984).

■ We believe that under the foregoing legal principles, a verdict reduction reflecting the settlements was required here. The Board suffered a single, indivisible loss attributable to the combined actions of the multiple defendants in designing and constructing the high school. The defendants therefore shared a common liability for the damages suffered by the Board. The evidence and measure of compensatory damages was the same under both theories of liability. In essence, the Board merely asserted alternative grounds for the same

relief. It is, therefore, entitled to only one compensatory damage award.

■ Under these circumstances, where there is a single indivisible loss arising from the actions of multiple parties who have contributed to the loss, the fact that different theories of liability have been asserted against them does not foreclose their right of contribution *inter se* or prevent them from obtaining a verdict credit for settlements made with the plaintiff by one or more of those jointly responsible. Accordingly, we conclude that ZMM was, in fact, entitled to reduction of the verdict to reflect prior payments by Corte and Nutting in satisfaction of the Board's loss.[15]

## II.

■ On cross-assignment of error, the Board contends that the trial court erred in refusing to grant its post-judgment motion for prejudgment interest on the verdict. The trial court granted the Board post-judgment interest on the $1,000,000 verdict from the verdict date, but held that since the Board had elected to have judgment entered on the breach of contract theory, it was not entitled to prejudgment interest.

Admittedly, there is some confusion in our cases with regard to prejudgment interest in contract cases. In *Bond v. City of Huntington,* 166 W.Va. 581, 596, 276 S.E.2d 539, 547 (1981), for example, we commented that W.Va.Code, 56–6–27 (1923),[16] embodied the common law principle that in contract claims, interest was awarded as part of the compensatory damages "where the principal is certain or can be rendered certain by some reasonable

calculation." *See Bischoff v. Francesa,* 133 W.Va. 474, 56 S.E.2d 865 (1949); *Cresap v. Brown,* 82 W.Va. 467, 96 S.E. 66 (1918). In *Bond,* however, we were concerned primarily with the award of interest in a tort action in the absence of an authorizing statute. A cursory reading of W.Va. Code, 56–6–27, clearly demonstrates that an award of interest in a contract action is not limited to cases in which the amount in question is undisputed. Interest is allowable "in any action founded on contract." As we indicated in Syllabus Point 1 of *Corte Co., Inc. v. County Comm'n of McDowell County,* 171 W.Va. 405, 299 S.E.2d 16 (1982): "Pursuant to *W.Va.Code,* 56–6–27 [1931], a county commission may be liable, in an action founded on contract, for interest on the principal due, or any part thereof, at the time of trial, after allowing all proper credits, payments and sets off." Such awards are intended to compensate the plaintiff for the losses he could have avoided or money he could have earned if the contract obligation had been timely performed.

Here, the jury found the Board's loss to be one million dollars. ZMM does not dispute that an award of prejudgment interest would have been proper on a tort judgment. In *Arcuri v. Great Am. Ins. Co.,* 176 W.Va. 211, 219, 342 S.E.2d 177, 185 (1986), we held that the plaintiffs, who had sued their fire and hazard insurers in both contract and tort for delay in payment of insurance proceeds, were entitled to interest on the proceeds of the policies "whether the action against the insurers is for breach of contract or for the tort of bad

---

**15.** The Board contends the jury has already performed this verdict reduction function. At trial, however, the jury was not advised of the amounts of the Corte and Nutting settlements, only of their existence and that Corte and Nutting were no longer parties to the case. The jury was instructed to return a verdict which would fairly compensate the Board for its damages if they believed ZMM was liable. The Board produced evidence of damages of between $1.5 and $1.9 million. However, ZMM developed evidence that the expert responsible for these estimates relied on specifications provided by the Board rather than on an independent assessment of the damage. There was also evidence that the repair work could have been

accomplished at a lesser cost. Under these circumstances, we cannot accept the Board's factual argument that the jury deducted the settlements, the amounts of which were unknown to it, before rendering the verdict of $1,000,000.

**16.** W.Va.Code, 56–6–27, provides:

"The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict."

faith delay in payment." We believe the Board is entitled to no less.

On remand, the trial court should recall the rate of interest spelled out in Syllabus Point 7 of *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985):

> "Prejudgment interest accruing on amounts as provided by law prior to July 5, 1981 [*W.Va.Code*, 56-6-27 and -29 [1931]] is to be calculated at a maximum annual rate of six percent under *W.Va. Code*, 47-6-5(a) [1974], and thereafter, at a maximum annual rate of ten percent in accordance with the provisions of *W.Va. Code*, 56-6-31 [1981]."

*Weimer–Godwin v. Board of Educ. of Upshur County*, 179 W.Va. 423, 428, 369 S.E.2d 726, 731 (1988). Prejudgment interest should be calculated from the date on which the cause of action accrued. *See* Syllabus Point 2, *Grove v. Myers*, 181 W.Va. 342, 382 S.E.2d 536 (1989).

Although from the record before us, it is difficult to pinpoint the precise date when the cause of action arose, it would appear that the major damage had occurred at least by July, 1983. Prejudgment interest should be awarded on the entire $1,000,000 verdict from the date of the cause of action.[17] Because the Board received the Corte and Nutting settlements less than one month before the jury verdict, there is no necessity to adjust the prejudgment interest for the settlement amounts. Finally, the principal on which the award of post-judgment interest will be calculated should be arrived at by subtracting the dollar amount of all settlements from the $1,000,000 verdict plus prejudgment interest.

---

17. The Board's election to accept the jury verdict on the contract theory, as earlier indicated, does not preclude the settlement offsets. It does, however, preclude reduction of the verdict to reflect the 5 percent contributory negligence the jury allocated to the Board in the negligence action.

---

## III.

ZMM next contends that the trial court erred in not granting its motion for a mistrial. The motion, made after the jury had retired to deliberate, was based on allegedly improper comments made by counsel for the Board in closing arguments[18] indicating that the attorney "believed in" his client's case, that witnesses for ZMM had been unfriendly to the Board's witnesses, and that one ZMM witness had been "winking at the ladies on the jury" while counsel's back was turned.

In Syllabus Point 2 of *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983), we stated:

> " 'Though wide latitude is accorded counsel in arguments before a jury, such arguments may not be founded on facts not before the jury, or inferences which must arise from facts not before the jury.' Syl. pt. 3, *Crum v. Ward*, 146 W.Va. 421, 122 S.E.2d 18 (1961)."

Certainly, the comments of the Board's attorney stated matters not in evidence. In Syllabus Point 4 of *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.*, 152 W.Va. 549, 165 S.E.2d 113 (1968), we recognized:

> "Whether a motion for a mistrial should be sustained or overruled is a matter which rests within the trial court's discretion and the action of the trial court in ruling on such a motion will not be cause for reversal on appeal unless it clearly appears that such discretion has been abused."

We have also held on several occasions that improper personal remarks of counsel do not always require reversal of a judgment. *See Jenrett v. Smith, supra; Leftwich v. Wesco Corp.*, 146 W.Va. 196, 119 S.E.2d 401 (1961), *overruled on other grounds, Bradley v. Appalachian Power Co., supra*.

---

18. ZMM also alleges that improper remarks were made by the Board's attorney in his opening statement. No objection was made at the time of the alleged impropriety, however, nor was the issue raised at the time of the motion for a mistrial. ZMM may not, therefore, assert the matter now. *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123 (1953); *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945).

Reviewing the record as a whole, we cannot say that counsel's improper comments were such as to mandate the granting of a mistrial. Accordingly, we find no abuse of discretion by the trial court which would warrant reversal of the judgment for refusal to grant a mistrial.

## IV.

ZMM also raises several assignments of evidentiary error. We are guided in our inquiry by the well-settled rule stated in Syllabus Point 7 of *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985):

> " ' "Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983).' Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)."

*See West Virginia Dep't of Highways v. Mountain, Inc.*, 167 W.Va. 202, 279 S.E.2d 192 (1981); *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976).

### A.

ZMM first contends that the trial court erred in allowing J.E. Caffrey, a consulting engineer, to testify as an expert witness on matters of structural engineering and design. Mr. Caffrey had been educated as a mining engineer, but had over twenty-five years experience supervising various kinds of engineers and construction. Mr. Caffrey stated that his experience had made him familiar with the construction methods used in building the high school. The court qualified him to testify as an expert as to structural matters.

In Syllabus Point 3 of *Ventura v. Winegardner*, 178 W.Va. 82, 357 S.E.2d 764 (1987), we stated:

> " 'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.' W.Va.R.Evid. 702."

*See West Virginia Dep't of Highways v. Thompson*, 180 W.Va. 114, 375 S.E.2d 585 (1988). In *Ventura*, we recognized that Rule 702 "liberally allows a witness to testify as an expert[.]" 178 W.Va. at 86, 357 S.E.2d at 768. Federal court decisions interpreting Rule 702 of the Federal Rules of Evidence, which is identical to our rule, hold that the witness may be qualified as an expert by any one of the means listed, i.e., knowledge, skill, experience, training, or education. *Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154 (4th Cir.1986); *Garrett v. Desa Indus., Inc.*, 705 F.2d 721 (4th Cir.1983); *Dychalo v. Copperloy Corp.*, 78 F.R.D. 146 (E.D.Pa.), *aff'd*, 588 F.2d 820 (3d Cir.1978). *See generally* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[04] (1988); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 7.1(B) at 419–20 (2d ed. 1986). Adoption of W.Va.R.Evid. 702 did not affect the well-settled rule of our prior law which was stated in Syllabus Point 4 of *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974):

> " 'Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.' Point 5, syllabus, *Overton v. Fields*, 145 W.Va. 797 [117 S.E.2d 598 (1960) ]."

*See State v. M.M.*, 163 W.Va. 235, 256 S.E.2d 549 (1979); *Byrd v. Virginian Ry. Co.*, 123 W.Va. 47, 13 S.E.2d 273 (1941). *See generally* 3 Weinstein & Berger, *supra*.

The evidence here demonstrated that although Mr. Caffrey had not been educated as a structural engineer, he had many years experience in the construction business and was familiar with the methods used in this instance. In view of this evidence, we are unwilling to say that the trial court abused its discretion in allowing Mr. Caffrey to testify as an expert on structural matters.

### B.

ZMM next contends that the trial court erred in not allowing it to present the testimony of certain witnesses on the issue of damages. These witnesses were originally secured by Corte, who had taken the primary pretrial responsibility for presentation of evidence regarding damages. As part of its settlement with the Board, however, Corte agreed not to "make available to the remaining parties in the civil action ... any expert witnesses named by it in connection with said civil action."

When ZMM attempted to call the Corte witnesses at trial, the trial court ruled that they were "expert witnesses" within the meaning of the settlement agreement and refused to make them available to testify for ZMM. The court did grant ZMM a recess to attempt to obtain an expert of its own, but when trial resumed five days later, ZMM asserted that it had been unable to locate any witnesses who could offer the same testimony.[19]

This is not the first time that we have had a claim of this nature. In *Riggle v. Allied Chem. Corp.*, 180 W.Va. 561, 378 S.E.2d 282 (1989), one of the defendants settled with the plaintiffs during the first day of trial. This left the remaining defendant without the benefit of the settling defendant's experts. We rejected the non-settling defendant's claim of error, stating:

"Appellant had two possible courses of action to protect itself against a settlement between plaintiffs and Allied. Given the substantial evidence that appellant was at least partially at fault and the existence of the indemnity provision in appellant's contract with Allied, appellant would have been well advised to settle the case itself. Alternatively, if appellant wanted to fight plaintiffs'

claim, it could have prepared its own case rather than relying on Allied's experts. Appellant chose neither course of action and has only itself to blame for the result." 180 W.Va. at 569, 378 S.E.2d at 290.

It is obvious to any sophisticated trial lawyer that in litigation involving multiple defendants there is the likelihood that settlements will occur before trial. To rely on another party defendant's witnesses without some formal agreement as to shared use is to invite the consequences that arose in *Riggle* and in the present case. The end result is that no error can be claimed.

### C.

Finally, ZMM contends that the trial court erred in not allowing ZMM's witnesses to testify as to their conversations with John Drosick, Superintendent of McDowell County Schools at the time the construction was being planned. Mr. Drosick had died prior to trial. When Mr. Zando attempted to testify as to Mr. Drosick's statements to him concerning the site of the high school, counsel for the Board objected on grounds that the testimony was hearsay and violated W.Va.Code, 57–3–1 (1937),[20] also known as the Dead Man's Statute. The circuit court sustained the objection.

ZMM contends that the trial court erred in excluding this testimony. We agree that W.Va.Code, 57–3–1, does not prevent the admission of the testimony in question. In Syllabus Point 10 of *Moore v. Goode*, 180 W.Va. 78, 375 S.E.2d 549 (1988), we outlined its general operation:

"To summarize the basic operation of the Dead Man's Act, W.Va.Code, 57–3–1, a concurrence of three general conditions must be met in order to bar the witness's

---

**19.** It does not appear that ZMM attempted to subpoena Corte's witnesses in order to challenge the validity of the settlement contract language as to unavailability.

**20.** W.Va.Code, 57–3–1, provides, in pertinent part:

"No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives

any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic."

testimony. First, the testimony must relate to a personal transaction with a deceased or insane person. Second, the witness must be a party to the suit or interested in its event or outcome. Third, the testimony must be against the deceased's personal representative, heir at law, or beneficiaries or the assignee or committee of an insane person."

It is apparent that the third condition is not met in this case. This suit was not against Mr. Drosick's personal representative.

Moreover, we have traditionally held that a witness can testify about the statements of a deceased agent when the suit is against the principal. A rather similar situation existed in *Board of Educ. of Elk Dist. v. Harvey,* 70 W.Va. 480, 74 S.E. 507 (1912), where the plaintiff, who had sued the school board over the ownership of a school building, testified to a conversation he had had with a member of the school board who subsequently died. We held in Syllabus Point 1 that this testimony did not transgress the Dead Man's Act: "A party to a suit is competent to testify in his own behalf, against a board of education in relation to a personal transaction, between himself and a deceased member of such board." *See also Cross v. State Farm Mut. Auto. Ins. Co.,* 182 W.Va. 320, 387 S.E.2d 556 (1989); *Keatley v. Hanna Chevrolet Co.,* 121 W.Va. 669, 6 S.E.2d 1 (1939).

Finally, such evidence was not inadmissible as hearsay. Both Rule 801(d)(2)(D) of the West Virginia Rules of Evidence [21] and our prior law recognize that statements made by an agent or employee within the scope of his agency or employment and during the existence of the agency or employment relationship are not hearsay and are admissible against a principal or employer who is a party to the litigation. *See Coates v. Montgomery Ward & Co.,* 133 W.Va. 455, 57 S.E.2d 265 (1949); Cleckley, *supra* § 8.5(E) at 481–82.

Although we conclude that the trial court erred in excluding the evidence of Mr. Drosick's statement, ZMM fails to demonstrate the relevance of this evidence or how the exclusion of it at trial was prejudicial to its case. As the Court stated in Syllabus Point 5 of *Maxwell v. Kent,* 49 W.Va. 542, 39 S.E. 174 (1901):

> "When evidence is excluded and the action of the court in excluding it is relied upon in the appellate court, it must appear on the record that the evidence rejected was or would have been relevant, material and important to make its rejection available as a ground of error."

*See Papenhaus v. Combs,* 170 W.Va. 211, 292 S.E.2d 621 (1982); *Crawford v. Roeder,* 169 W.Va. 158, 286 S.E.2d 273 (1982). In view of ZMM's failure to make such a showing, we cannot say that the exclusion of this evidence was reversible error.

### V.

For all the reasons stated above, we find no error warranting reversal of the jury's verdict, but we do conclude that the trial court erred in entering judgment against the defendant for the full amount of the verdict. We also agree that the Board is entitled to prejudgment interest. We, therefore, set aside the judgment of the Circuit Court of Kanawha County and remand the case to that court for entry of judgment in accordance with the principles enunciated herein.

Affirmed, in part, Reversed, in part, and Remanded.

---

**21.** W.Va.R.Evid. 801(d)(2)(D) provides, in pertinent part:

> "(d) *Statements Which are not Hearsay.*—A statement is not hearsay if—
>
> \* \* \* \* \* \*
>
> "(2) Admission by Party–Opponent.—The statement is offered against a party and is ...

(D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]"