400 S.E.2d 893

**Joseph BIRO and Brenda Biro**

v.

**FAIRMONT GENERAL HOSPITAL, INC.**

No. 19601.

Supreme Court of Appeals of West Virginia.

Dec. 19, 1990.

---

Andrew G. Fusco, John S. Dalporto, Thomas H. Newbraugh, Morgantown, for Joseph Biro and Brenda Biro.

Alfred J. Lemley, Fairmont, for Fairmont General Hosp., Inc.

PER CURIAM:

The appellants, Joseph and Brenda Biro, appeal from the February 8, 1990, order of the Circuit Court of Marion County, which granted Fairmont General Hospital's motion to offset the jury verdict. The appellants, plaintiffs below, had been awarded approximately $100,000 in damages by the jury. The Circuit Court of Marion County

offset the verdict by $30,000, the amount of a settlement made prior to trial.

This case involves a malpractice suit brought by Brenda and Joseph Biro against Robert Hamilton, M.D., and the Fairmont General Hospital. Ms. Biro was admitted to Fairmont General Hospital, where a hysterectomy was performed by Dr. Hamilton on October 7, 1985. Shortly after the surgery, Ms. Biro claimed that she experienced numbness in her legs, which she contends was caused by Dr. Hamilton negligently compressing her femoral nerve during the operation. While recuperating, the appellants also claim that she injured her right knee when she fell on October 9, 1985, while being assisted to the bathroom by two nurses employed by Fairmont General Hospital. The appellants assert that the injury to her right knee has resulted in multiple surgeries. Fairmont General Hospital denies that any fall occurred while Ms. Biro was being assisted by its nurses, instead asserting that Ms. Biro fell on October 13, 1985, while moving about on her own prior to discharge.

Thus, the appellants filed suit against Dr. Hamilton and Fairmont General Hospital. Prior to trial, Dr. Hamilton settled with the Biros in the amount of $30,000. The settlement was not disclosed to the jury in the case remaining against Fairmont General Hospital, nor was there direct evidence presented regarding the nerve injury. However, in their opening statement, the Biros' attorney noted that as part of her recovery from the hysterectomy, she had some numbness and weakness in her legs.

At trial, Fairmont General Hospital contended that the injury to the right knee resulted from a fall which Ms. Biro took while attempting to make a trip to the bathroom on her own. Ms. Biro disagreed, presenting evidence that the injury occurred while being assisted by two nurses in Fairmont General Hospital's employ. Dr. Hamilton testified that he first learned of an injury to the right knee on October 13, 1985, several days after the surgery. He did not state an opinion as to whether the fall was caused by the numbness or by the negligence of the nurses. The Biros presented Peter Thrush, M.D., who testified regarding his treatment of the injury to the right knee. He admitted that she fell as a result of the weakness in her leg. Thus, because of the causal connection made by Dr. Thrush, the hospital concluded that the medical expenses relating to the alleged knee injury necessarily included damages related to Dr. Hamilton's compression of Ms. Biro's femoral nerve during the hysterectomy.

On June 13, 1989, the jury returned a verdict of 60% negligence for Fairmont General Hospital and 40% negligence for Ms. Biro, which resulted in an award of $67,163.01 for Ms. Biro and $37,500 for Joseph Biro. On June 28, 1989, Fairmont General Hospital moved to offset the jury verdict by $30,000, the amount of the settlement reached with Dr. Hamilton. The trial court granted the motion on July 19, 1989. The plaintiffs filed a motion for rehearing, which was denied by order dated September 13, 1989. Shortly thereafter, they filed an appeal to this Court.

■ The issue before this Court is whether the offset was proper. More specifically, we must determine whether the action against Fairmont General Hospital for the injury to the right knee was independent from the femoral nerve damage caused during the hysterectomy, and thus, not susceptible to an offset.

■ It is well settled that offsets are permitted when joint tortfeasors are involved. In *Hardin v. New York Central Railroad Co.*, 145 W.Va. 676, 116 S.E.2d 697 (1960), this Court held that "[w]here a payment is made, and release obtained, by one joint tort-feasor, other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong." *Id.* at syl. pt. 2. Further, this Court has also held that "[p]artial satisfaction of the injured person by one joint tort-feasor is a satisfaction, pro tanto, as to all." Syl. pt. 5, *New River & Pocahontas Consolidated Coal Co. v. Eary*, 115 W.Va. 46, 174 S.E. 573 (1934).

Joint tortfeasors were defined by this Court in *Butler v. Smith's Transfer Corp.,*

147 W.Va. 402, 128 S.E.2d 32 (1962): "[o]ne tort-feasor is guilty of negligence and another tort-feasor is also guilty of negligence by virtue of acts or omissions which occur in point of time and place after the first tort-feasor's act of negligence, both of which coupled together proximately caused damage or injury to a plaintiff...." *Id.* at syl. pt. 4. Thus, in order for Dr. Hamilton and Fairmont General Hospital to be joint tort-feasors, the earlier malpractice must have proximately caused the injury to the right knee.

In *Groves v. Compton*, 167 W.Va. 873, 280 S.E.2d 708 (1981), we explained how the amount of a settlement paid by a joint tortfeasor can be used as a credit on a verdict owed by another joint tortfeasor:

> In *Hardin v. New York Central R. Co.*, 145 W.Va. 676, 116 S.E.2d 697 (1960), we outlined several different methods of handling the amount of a settlement paid by a joint tortfeasor, which payment may be used as a credit on the amount found to be owed by another joint tortfeasor. The jury can be informed of the amount of the settlement and instructed that they must deduct this amount from their award of damages. Another approach is to make no reference to the settlement; and, after the verdict is returned and judgment entered, the defendant may utilize the settlement figure "when an attempt to satisfy the judgment is made." 145 W.Va. at 682, 116 S.E.2d at 701. Finally, by stipulation of the parties, the amount of the settlement can be used as a credit and deducted from the amount of the jury verdict. This method would presuppose that the jury is not informed of the settlement amount so that the possibility of a double deduction is avoided.

*Id.* 167 W.Va. at 877, 280 S.E.2d at 711.

◼ The practice of allowing offsets is "premised on the principle that a plaintiff is entitled to one, but only one, complete satisfaction for his injury." *Board of Education of McDowell Co. v. Zando, Martin & Milstead*, 182 W.Va. 597, 390 S.E.2d 796, 803 (1990). In *Zando*, the Court explained that "we have developed, independently of any assertion of contribution, a practice of allowing the defendant against whom a verdict is rendered to reduce the damages to reflect any partial settlement the plaintiff has obtained from a joint tortfeasor." *Id.* Thus, a defendant who settled prior to a verdict is released from any liability for contribution. However, we also found that "the reduction of the verdict to reflect partial settlements counterbalances the loss of the right of contribution, since the remaining defendants, who would otherwise have been entitled to such right, obtain the benefit of the settlement." (Citations omitted). *Id.* 182 W.Va. at 605, 390 S.E.2d at 804.[1] Consequently, "[d]efendants in a civil action against whom a verdict is rendered are entitled to have a verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties." *Id.* at syl. pt. 7, in part.

◼ In order to permit a verdict reduction reflecting a prior settlement, *Zando* held that there must be a "single indivisible loss arising from the actions of multiple parties who have contributed to the loss, ..." *Id.* at syl. pt. 8, in part. As long as the loss is indivisible, "a verdict credit for settlements made with the plaintiff by one or more of those jointly responsible" is not foreclosed merely because there are different theories of liability asserted against the multiple parties. *Id.*

In this case, however, we do not believe that the injury to Ms. Biro's knee, combined with the alleged femoral nerve injury, constituted a single, indivisible loss which resulted from the actions of the hospital and Dr. Hamilton. It is clear that the malpractice claim is a separate cause-of-action, and thus divisible, from the negligence on the part of the hospital. Further, we are not persuaded that Dr. Hamilton's actions, which caused the numbness in the leg, proximately caused the alleged fall

---

1. We note that there is a requirement that a settlement be made in good faith in order to recognize the finality of that settlement. *Zando*, 182 W.Va. at 605, 390 S.E.2d at 804. Since there is no issue in this case of whether Dr. Hamilton's settlement was in good faith, we will not address the issue.

which resulted in the right knee injury. From the verdict, the jury obviously believed that the hospital employees did not use due care in assisting Ms. Biro to the bathroom and allowed her to fall. Thus, because we believe the incidents in question are two separate causes-of-action, the lower court erred in offsetting the $30,000 settlement made by Dr. Hamilton in connection with the femoral nerve injury.

Accordingly, we reverse the ruling of the Circuit Court of Marion County granting Fairmont General Hospital's motion to offset.

Reversed.