393 S.E.2d 923

**Rufus CLINE and Beulah Cline, et al.**

**v.**

**Honorable Sam WHITE, Judge of the Third Judicial Circuit; Armstrong World Industries, Inc.; Fibreboard Corporation; Flexitalic, Inc.; GAF Corporation; Keene Industries; National Gypsum Company; Owens–Illinois, Inc.; Pittsburg Corning Corporation; Turner & Newell PLC; United States Gypsum; Raymark Industries; Celotex; Garlock, Inc.; Ohio Valley Insulating; Nitro Industrial Coverings, Inc.; Tasco Insulations, Inc.; Owens Corning Fiberglas, Inc.; H.K. Porter Co.; Union Boiler Company; Eagle Picher; Foster Wheeler Corporation; The Marmon Group; and Sealite Corporation.**

No. 19281.

Supreme Court of Appeals of West Virginia.

May 21, 1990.

**44**

Scott S. Segal, Hostler and Segal, Charleston, for Rufus Cline and Beulah Cline, et al.

Sam White, Judge, Circuit Court, St. Marys, Richard G. Lewis, Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for Raymark Industries and Celotex.

Frank A. O'Brien, Wray V. Voegelin, O'Brien, Cassidy & Gallagher, Wheeling, for Garlock, Inc.

Stephen P. Goodwin, Goodwin & Goodwin, Charleston, for Nitro Industrial Coverings.

David A. Faber, R. Scott Long, Spilman, Thomas, Battle & Klostermeyer, Charleston, for GAF Corp.

Arthur R. Gorr, Gorr, Dell & Loughney, Pittsburgh, Pa., for Foster Wheeler Corp.

John Preston Bailey, James A. Byrum, Jr., Byrum & Bailey, Wheeling, for Sealite Corp.

Charles Bagley, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for Eagle Picher.

Shawn P. George, Jackson & Kelly, Charleston, for The Marmon Group.

Albert H. Parnell, Kimberly Houston, H. Lane Young, Freeman & Hawkins, Atlanta, Ga., for Armstrong World Industries, Inc., Fibreboard Corp., Flexitalic, Inc., GAF Corp., Keene Industries, National Gypsum Co., Owens–Illinois, Inc., Pittsburg Corning Corp., Turner & Newell PLC, U.S. Gypsum.

Boyd L. Warner, Waters, Warner & Harris, Clarksburg, for Tasco Insulations, Inc.

David Hendrickson, Kay, Casto, Chaney, Love & Wise, Charleston, for Fibreboard Corp., Owens–Illinois, Inc., Pittsburg Corning Corp.

Steven Wright, Skelton, Taintor & Abbott, Auburn, for H.K. Porter Co.

John J. Repcheck, Sharlock, Repcheck & Mahler, Pittsburgh, Pa., for Anchor Packing Co., Union Boiler Co.

Eric Falk, Paul K. Vey, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for Ohio Valley Insulating.

Robert Losey, Wood, Grimm & Delp, Huntington, for Owens Corning Fiberglas, Inc.

Robert O'Donnell, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Fibreboard Corp., Owens–Illinois, Inc.

WORKMAN, Justice:

This case is before the Court upon a writ of prohibition asking this Court to prohibit the Circuit Court of Pleasants County, Judge Sam White presiding, from requiring petitioners to disclose the identity of non-party settlors to the defendants. The petitioners contend that the lower court had no authority to require the disclosure of the identities of nonparty settlors. We agree and grant said writ.

The petitioners are members of various building trade organizations who, during the course of their work, were exposed to airborne asbestos fibers. Consequently, petitioners filed complaints against multiple asbestos manufacturing companies as

well as multiple distributors and installers of asbestos-containing products, alleging damages due to exposure to various asbestos-containing materials.

As a result of settlement negotiations conducted by petitioners' attorney,[1] six of the petitioners settled with two or more nonparties prior to the institution of the above lawsuit with the settlement amounts varying from $4,000.00 to $6,000.00. The settlements, however, were contingent upon petitioners' agreement to neither sue the settling entities nor disclose their identity.

Through interrogatories, some defendants sought to discover the names of entities with whom the petitioners had settled and the amounts of the settlements. Petitioners refused to answer those particular interrogatories in furtherance of the settlement agreement. However, on September 20, 1989, the petitioners did file with the lower court a notice of settlement which effectively advised the court and all parties as to the amounts of settlements which they had reached with the nonparties.

On October 11, 1989, the circuit court, at a pretrial conference, directed that the identity of the nonparty settlors would have to be disclosed by noon, Monday, October 16, 1989, unless petitioners filed a petition for a writ of prohibition with this Court. The petitioners filed this petition.

After the petition was filed, but prior to any ruling by this Court, trial commenced for the asbestos cases on October 23, 1989. Ultimately, all but one of the twenty-five defendants settled prior to verdict.

■ The main issue in this case is whether the petitioners must disclose the identities of nonparty settlors to the defendants. This jurisdiction recognizes the well-established principle that settlement should be encouraged whenever possible. Specifically, in Syl.Pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968), this Court held that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Accord Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 604, 390 S.E.2d 796, 803 (1990) (hereinafter referred to as *Zando* ); *State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 320 S.E.2d 345 (1984).

The crux of the instant case is how to deal with those settlements in which a plaintiff settles with a *nonparty* prior to the filing of the lawsuit. Petitioners contend that their ability to negotiate with and settle claims with the understanding in the settlements that the identity of the settlors will not be disclosed will be frustrated if disclosure is required. The respondent circuit judge, however, argues that without disclosure of the identities of settling nonparties, there will be no way to determine if the settlements were indeed made in good faith since the settling nonparty only has a defense against contribution to a judgment if the settlement was made in good faith, and that defendants can't cross-claim or implead against the nonparties unless they know their identities.

■ First, there is no doubt that under *Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977) and *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), that the defendants are entitled to have a jury consider the fault of all the joint tortfeasors involved in the injury. Specifically, this Court in Syllabus Point 3 of *Haynes* held that "one joint tortfeasor is entitled to contribution from another joint tortfeasor, except where the act is *malum in se.*" Syl.Pt. 3, in part, 161 W.Va. at 230, 240 S.E.2d at 545. We have recently held in Syl.Pt. 2, *Zando,* 182 W.Va. at 600, 390 S.E.2d at 799, that

[a] defendant in a civil action has a right in advance of judgment to join a joint tortfeasor based on a cause of action for contribution. This is termed an 'inchoate right to contribution' in order

---

1. These settlement negotiations further resulted in settlements with the nonparties and other potential plaintiffs involving several hundred asbestos personal injury lawsuits not yet filed.

to distinguish it from the statutory right of contribution after a joint judgment conferred by W.Va.Code, 55–7–13 (1923). Normally, this type of joinder occurs when a defendant "[a]t any time after commencement of the action ..., as a third-party plaintiff, ... cause[s] a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him...." W.Va.R.Civ.P. 14; *see also Haynes,* 161 W.Va. at 235–236, 240 S.E.2d at 547–48.

The defendants never attempted to implead the nonparties prior to trial. Even though the petitioners refused to answer questions regarding which nonparties had settled, the defendants, in response to other interrogatories, were provided with all the potential parties. Consequently, the names of the nonparties were contained in the answers to those interrogatories involving potential parties. The defendants could have attempted to bring in the nonparties utilizing the information obtained in the interrogatories, but didn't.

■ Second, settlements which occur between *parties* prior to trial are usually approached in one of two ways: (1) the jury is informed of the settlement, prior to its deliberation, and instructed that if a plaintiff's verdict is found, the settlement amount should be deducted from the verdict; or (2) the jury is not instructed that a settlement has been reached, but rather the trial court simply deducts the settlement amount from the plaintiff's verdict, if such a verdict is returned, prior to entering judgment. *Groves v. Compton,* 167 W.Va. 873, 880, 280 S.E.2d 708, 712 (1981). Regardless of which method is used,

> [i]n the absence of a written stipulation by the parties, the better rule is to leave the question of the manner of handling the offset occasioned by the settlement by a joint tortfeasor, as well as the manner of informing the jury that such party has been dismissed from the lawsuit, to the sound discretion of the trial court.

Syl.Pt. 2, *Groves,* 167 W.Va. at 873, 280 S.E.2d at 709.

In *Zando,* the Court recognized that since the verdict is reduced to reflect any

partial settlements by some defendants involved the "settling defendant is, in effect, paying a share of liability on the verdict ... [and] [a]t the same time, the use of the verdict credit ensures against double recovery by the plaintiff." *Zando,* 182 W.Va. at 605, 390 S.E.2d at 804.

It is undisputed in this case, that the plaintiffs did disclose the amounts of the settlements involved to the trial court so that any verdict returned against the defendants could be reduced by the amounts of those settlements entered into with the nonparties.

■ Lastly, but certainly not least significantly, the main contention asserted by the lower court was that without disclosure of the identities of the nonparties no determination could be made regarding whether the settlements between the party and nonparties had been entered into in good faith. This issue of good faith is important since we have held that "a party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution." *Id.* 182 W.Va. at 606, 390 S.E.2d at 804–05.

■ There is no reason for not applying this same concept to nonparties, for the logic is the same. A settlement entered into between a nonparty and a claimant prior to the instigation of a lawsuit, should discharge the nonparty from further obligation to either the claimant or the nonparty's joint tortfeasor, as long as the settlement was entered into in good faith and the amount of the settlement is disclosed to the trial court for verdict reduction. *See Stambaugh v. Superior Court,* 62 Cal. App.3d 231, 235, 132 Cal.Rptr. 843, 845–46 (1976).

In attempting to determine whether the settlement was entered into in good faith, the California Court of Appeal offers some helpful guidance:

> Except in rare cases of collusion or bad faith, ... a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace

and quiet, or otherwise. His good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote.

*Stambaugh*, 62 Cal.App.3d at 238, 132 Cal. Rptr. 847–48.

■ It should be noted that there has been no attempt whatsoever by the defendants in the underlying action to show that the settlements made by the nonparties were entered into in anything but good faith. This becomes especially apparent in that not only did the defendants fail to file anything with this Court regarding this matter, but the lack of disclosure prior to trial did not prevent all but one of the defendants from settling out prior to the verdict. Further, good or bad faith was never raised by any of the defendants as the reason for requesting the identities of the nonparties who had settled.

In the present case, we find that the trial court erred in requiring petitioners to disclose the identities of settling nonparties. Since the trial court put forth no sound reason for requiring such disclosure, and in light of our previously enunciated policy of encouraging settlement of litigation,[2] together with the principles enunciated herein, we find that the circuit court exceeded its jurisdiction and that all the requirements for granting a writ of prohibition have been met. *See Kennedy v. State*, 176 W.Va. 284, 342 S.E.2d 251 (1986); *State ex rel. Williams v. Narick*, 164 W.Va. 632, 264 S.E.2d 851 (1980).[3]

Based on the foregoing opinion, the writ of prohibition is granted.

Writ granted.

---

**2.** According to records kept by the administrative office of the Court, as of March 26, 1990, there were 1,605 asbestos claims pending in West Virginia. Our policy of encouraging settlement where possible becomes crucial in this context.

**3.** In Syllabus Point 1 of *Narick* we held that '[w]here prohibition is sought to restrain a trial court from the abuse of its legitimate powers, ... the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.' 164 W.Va. at 632, 264 S.E.2d at 851 (citing Syl.Pt. 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973)).