447 S.E.2d 912

The McDOWELL COUNTY BOARD OF EDUCATION Petitioner,

v.

Honorable Booker T. STEPHENS, Judge of the Circuit Court of McDowell County, Melanie Campbell Church and Wendy Emazetta Burks, Respondents.

No. 22050.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 1994.

Decided July 20, 1994.

David E. Schumacher, Jay W. Craig, Shuman, Annand & Poe, Charleston, for petitioner.

Joseph A. Colosi, Welch, for respondent Melanie Campbell Church.

Kermit J. Moore, Brewster, Morhous & Cameron, Bluefield, for respondent Wendy Emazetta Burks.

WORKMAN, Justice:

This case is before the Court upon petition for writ of prohibition brought by the Petitioner, the McDowell County Board of Education, against the Respondents, the Honorable Booker T. Stephens, Judge of the Circuit Court of McDowell County, West Virginia, Melanie Campbell Church, the Plaintiff below (also referred to as the Plaintiff), and Wendy Emazetta Burks, the Defendant and Third–Party Plaintiff in the original action brought by the Plaintiff. A recitation of the facts is necessary in order to frame the issues surrounding the petition for writ of prohibition. On September 9, 1989, the Plaintiff was involved in a motor vehicle accident when a school bus owned by the Petitioner and operated by the Petitioner's agent, pulled out in front of a vehicle operated by Ms. Burks. Ms. Burks, attempting to avoid the school bus, ran head-on into the vehicle in which the Plaintiff was a passenger, causing the Plaintiff injury. The Plaintiff below was fifteen years old at the time of the accident. She instituted suit against Ms. Burks within two years from the date of the accident. Subsequently, Ms. Burks filed a third-party complaint for contribution against the Petitioner.

Prior to trial, the Petitioner sought to negotiate a settlement with the Plaintiff for the sum of $5,000, even though the Plaintiff had not asserted a direct action against the Petitioner. The Plaintiff declined to accept the $5,000 settlement offer.

The Petitioner settled with Ms. Burks for $5,000 and obtained a release from her, prior to trial.[1] The December 10, 1992, court order upholding this settlement provides:

> Whereupon, the Court is of the opinion to and does hereby find that the settlement between the Third–Party Plaintiff, Wendy Emazetta Burks and the Third–Party Defendant, McDowell County Board of Education is a good faith settlement, and that the Third–Party Plaintiff's claim against the Third–Party Defendant McDowell County Board of Education is hereby dismissed with prejudice to the Third–Party Plaintiff and any further cross-claims, counter-claims, or direct actions or claims against the Third–Party Plaintiff,[2] being untimely, are hereby barred.[3]

---

1. It is undisputed that this settlement entered into between the Petitioner and Ms. Burks, as well as the settlement entered into between the Plaintiff below and Ms. Burks, were good faith settlements, as neither settlement was objected to before the lower court as being entered into in bad faith.

2. The Petitioner claims that Third–Party Plaintiff should be Third–Party Defendant and that this was a typographical error in the order. Because the Respondents admit that the Petitioner's claims that "this is a typographical error ... might be true[,]" for the purposes of this opinion, we will treat this specific claim of the Petitioner as true.

3. This order states that "any further cross-claims, counterclaims, or direct actions or claims against the Third–Party ... [Defendant], *being untimely,* are hereby barred." (emphasis added). The Petitioner argues that this language constitutes a bar to any and all claims later asserted by the Plaintiff below against the Petitioner. Upon

The Plaintiff objected to the Petitioner being dismissed from the case and did not release the Petitioner from liability in any manner.

The case proceeded to trial on December 14, 1992. After the Plaintiff's case-in-chief, a settlement in the amount of $45,000 was reached between the Plaintiff and Ms. Burks. Included in the $45,000 settlement was the $5,000 previously paid by the Petitioner to Ms. Burks. As consideration for the settlement, the Plaintiff agreed to execute a release as to the personal assets of Ms. Burks and her insurer. The Petitioner was not in any way released under the settlement reached between the Plaintiff and Ms. Burks. The court stated in its January 14, 1993, order upholding the settlement and declaring a mistrial that: "It is understood by the Court that Plaintiff has expressly reserved the right to proceed in this action to collect from Allstate Insurance Company [the Plaintiff's underinsurance carrier] *or other proper defendant* any funds due under the applicable underinsured motorist policy or other policies." (emphasis added). The court also stated in the order that "[t]his case is to proceed for the purpose of Plaintiff asserting a claim against Allstate Insurance Company *or other defendant* with a new trial date to be set by the Court." (emphasis added).

By order dated January 25, 1993, the circuit court allowed the Plaintiff to file an amended complaint wherein the Plaintiff alleged a direct action against the Petitioner. The Petitioner filed two different motions to dismiss the complaint pursuant to West Virginia Rule of Civil Procedure 12(b)(6). The circuit court denied both motions by orders dated May 4, 1993, and November 23, 1993, respectively.

The petition for writ of prohibition is based upon a January 25, 1993, order of the circuit court which allowed the Plaintiff to file an amended complaint asserting a direct civil action against the Petitioner, and a November 23, 1993, order denying the Petitioner's motion to dismiss the Petitioner as a Defendant in the direct civil action brought by the

Plaintiff. The Petitioner argues that: 1) the circuit court exceeded its legitimate powers by refusing to dismiss the Petitioner as a party defendant, by refusing to recognize the Petitioner's prior good faith settlement with the joint tortfeasor and by refusing to recognize the circuit court's prior dismissal of the Petitioner from the original action as a bar to the Plaintiff's direct action against the Petitioner; and 2) the circuit court exceeded its legitimate powers by allowing the Plaintiff to file an amended complaint against the Petitioner. Based upon a review of the record, the parties' briefs and arguments, and all other matters submitted before this Court, we find that grounds do not exist for the issuance of a writ of prohibition in this case.

## I.

The Court has never had the opportunity to discuss the crux of this case which focuses upon the following issue: Whether a good faith settlement of a contribution claim between one joint tortfeasor and another will bar the assertion of a direct action by the plaintiff against the settling joint tortfeasor? The Petitioner maintains that 1) by refusing to dismiss the Petitioner, the circuit court exceeded its legitimate powers and ignored the Petitioner's clear right to forever end the litigation against it by settling in good faith with the joint tortfeasor; 2) by allowing the Plaintiff to proceed with a direct action against the Petitioner, the public policy of this state to promote and encourage the resolution of controversies by compromise and settlement rather than by litigation is completely trampled; 3) by allowing the Plaintiff to assert a direct action against the Petitioner, the circuit court ignored the effect of its prior order, which dismissed the Petitioner with prejudice. In contrast, the Respondents maintain that the circuit court has not exceeded its legitimate powers in refusing to dismiss the Plaintiff's direct action against the Petitioner. The Respondents also argue that this Court has never held that one defendant could release a claim belonging to the plaintiff by settlement between joint tort-

---

review of the entire December 10, 1992, order, we find the above language to be ambiguous; however, it is apparent from the January 14, 1993, order that the circuit court corrected this

ambiguity when it expressly stated that the Plaintiff had the right to proceed against other proper defendants, which would include the Petitioner.

feasor's. Furthermore, allowing a good faith settlement and a release between two joint tortfeasors to bar any further direct action by the plaintiff against any of the joint tortfeasors impugns a plaintiff's right to seek redress in court.

■ It is well-established in this jurisdiction that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968). In adhering to this strong public policy of upholding settlements, this Court has on numerous occasions addressed the effect settlements have on various parties and potential parties to litigation.

■ First, in syllabus points 6 and 7 of *Board of Education v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990), this Court explained the effect of a settlement on actual parties to a lawsuit:

> A party in a civil action who has made a good faith settlement with the *plaintiff* prior to a judicial determination of liability is relieved from any liability for contribution.

> Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.... (emphasis added).

■ Next, in *Cline v. White*, 183 W.Va. 43, 393 S.E.2d 923 (1990), the Court expanded the concept of relieving a party from any liability for contribution who, prior to a determination of liability, enters a good faith settlement as enunciated in *Zando*, to encompass not only parties, but nonparties and claimants, prior to the instigation of a lawsuit. In *Cline*, the petitioners settled with two or more nonparties prior to the institution of a lawsuit. The settlements, however, were contingent upon the petitioners' agreement to neither sue the settling entities nor disclose their identities. *Id.* at 45, 393 S.E.2d at 925. While the main issue before

the Court was whether the petitioners had to disclose the identities of nonparty settlors to the defendants, the crux of the case was how to deal with those settlements in which a plaintiff settles with a nonparty prior to the filing of a lawsuit. *Id.* In *Cline*, we determined that

> A settlement entered into between a nonparty and a claimant prior to the instigation of a lawsuit should discharge the nonparty from further obligation to either the claimant or the nonparty's joint tortfeasor, as long as the settlement was entered into in good faith and the amount of the settlement is disclosed to the trial court for verdict reduction.

*Id.* at 44, 393 S.E.2d at 924, Syl. Pt. 3.

■ In *Cook v. Stansell*, 186 W.Va. 189, 411 S.E.2d 844 (1991), the plaintiff was injured when a vehicle was driven through the front window of a beauty parlor at which the plaintiff was a patron. The plaintiff subsequently entered into a settlement with the driver. Thereafter, the plaintiff instituted a negligence action against the owners and managers of the shopping mall where the beauty parlor was located. The owners and managers filed a third-party complaint against the driver who had already settled. *Id.* at 190, 411 S.E.2d at 845. The driver filed a motion to dismiss the complaint. Before the court was a certified question of whether the good faith settlement between the nonparty and claimant prior to the origination of a lawsuit precluded a defendant from impleading the nonparty in a subsequently filed lawsuit? *Id.* We answered this question in the affirmative:

> [W]hen a settlement is entered into between a non-party and a claimant prior to the institution of the suit, a defendant in the suit cannot implead the non-party in a subsequently filed civil action, so long as the settlement was entered into in good faith and the amount of the settlement was disclosed to the trial court for verdict reduction.

*Id.* at 191, 411 S.E.2d at 846.

■ Finally, in *Smith v. Monongahela Power Co.*, 189 W.Va. 237, 429 S.E.2d 643 (1993), the Court once again reiterated the

law previously established in *Cline* and *Cook* by holding:

> If a plaintiff enters into a settlement with a non-party against whom it has not directly asserted a cause of action, and the settlement occurs before a judicial determination of liability, the settlement relieves the non-party of all further obligations to the plaintiff and all liability for contribution to the non-party's joint tortfeasor, if the settlement was made in good faith and the amount of the settlement is disclosed to the trial court for the purpose of reducing the verdict.

*Id.* at 243, 429 S.E.2d at 649 and Syl. Pt. 4.

What is evident from each of the above-mentioned cases is that a good faith settlement only relieves a party or nonparty from obligations to the plaintiff, as well as liability for contribution from other joint-tortfeasors, as long as that settlement was made with the *plaintiff.* Absent from all these cases is any indication from this Court that we would find that a settlement and release executed between one joint tortfeasor and another would relieve the settling joint tortfeasor from all obligations to the plaintiff. To the contrary, inherent in the principles enunciated by this Court is the plaintiff's right "to sue one or more joint tortfeasors...." *Zando,* 182 W.Va. at 603, 390 S.E.2d at 802.

■ Consequently, a good faith settlement of a contribution claim entered into between one joint tortfeasor and another, while resolving the legal obligations between the joint tortfeasors, does not bar the plaintiff from subsequently asserting a direct action against the settling joint tortfeasor unless the settling joint tortfeasor obtains a release from the plaintiff at the time of the settlement. Further, the amount of the settlement between the joint tortfeasors must be disclosed to the trial court for the purpose of reducing any verdict which may result from the subsequent action.

■ In the present case, there is no evidence before this Court, nor was there any objection or evidence presented before the lower court, that the settlement entered into between Ms. Burks and the Petitioner was anything but a good faith settlement. The effect of that settlement and corresponding release was that it only relieved the Petitioner from its obligations to Ms. Burks. Since the Petitioner failed to settle with the Plaintiff, failed to obtain a release from the Plaintiff at the time the Petitioner settled with Ms. Burks, and failed to obtain a release from the Plaintiff at the time Ms. Burks settled with the Plaintiff, the Petitioner left itself open for a direct action by the Plaintiff.

## II.

The only remaining issue is whether the direct action filed by the Plaintiff against the Petitioner was timely filed. The Petitioner argues that the circuit court exceeded its legitimate powers by allowing the Plaintiff to file an amended complaint asserting the direct action. Relying on Rule 15(c) of the West Virginia Rules of Civil Procedure,[4] the Petitioner asserts that it was prejudiced by the sudden assertion of the subject of the amendment to the extent that the Petitioner was previously relieved of any and all liability arising from the litigation instituted by the Plaintiff. Further, the Petitioner maintains that the Plaintiff should not profit by her lack of diligence in initially bringing a direct action against the Petitioner. The Respondents maintain that the Plaintiff's complaint against the Petitioner was timely filed in compliance not only with the specific language of the circuit court order, but also with the statute of limitations as set forth in West Virginia Code § 55–2–15 (1981).

■ A plaintiff can amend his complaint to add a third-party defendant as a party defendant, as long as that amendment to the complaint is timely made. *See Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 714, 289 S.E.2d 679, 689 n. 21 (1982). Additionally, West Virginia Rule of Civil Procedure 15 provides that a party may other-

---

4. West Virginia Rule of Civil Procedure 15(c) provides, in pertinent part, that:

An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits...."

718

wise amend a complaint after the responsive pleading is served or twenty days after the complaint is served, "only by leave of court ... and leave shall be freely given when justice so requires." This Court has interpreted this phrase in Rule 15 as follows:

'The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W.Va.R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.' Syl. pt. 3, *Rosier v. Garron, Inc.,* 156 W.Va. 861, 199 S.E.2d 50 (1973).

Syl. Pt. 6, *Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 381 S.E.2d 367 (1989). However, "[t]he liberality allowed in the amendment of pleadings does not entitle a party to be dilatory in asserting claims or to neglect his case for a long period of time." *Mauck v. City of Martinsburg,* 178 W.Va. 93, 95, 357 S.E.2d 775, 777 (1987).

The Petitioner relies heavily upon the *Mauck* decision for its argument that the Plaintiff lacked diligence in failing to bring the direct action earlier and that the unreasonable delay in the Plaintiff's action was justification for the circuit court to deny the motion for leave to amend the complaint. *Id.* This Court is unpersuaded by the Petitioner's argument. In this case, the evidence before the Court is that the Petitioner knew that it could be liable to the Plaintiff for the injuries she sustained, or the Petitioner would not have initially attempted to settle the matter with the Plaintiff. Moreover, the

Petitioner knew that the Plaintiff vehemently objected to the Petitioner's settlement with Ms. Burks, as well as the Petitioner's subsequent release and dismissal by the circuit court from the action with regard to Ms. Burks. Further, neither of the releases or settlements executed in this case pertained to any claims between the Plaintiff and the Petitioner, as the Plaintiff refused to release the Petitioner from its legal obligations. It should not have been a surprise to the Petitioner that the Plaintiff chose to assert a direct action against it so that the Plaintiff could attempt to be fully compensated for the injuries she sustained. Also, it was not prejudicial to the Petitioner for the circuit court to allow the amendment of the Plaintiff's complaint since, without an executed settlement and release with the Plaintiff, the Petitioner had to be cognizant of the potential for the Plaintiff to assert further litigation against it within the confines of the circuit court order dismissing the Petitioner from the case with regard to Ms. Burks. Accordingly, we conclude that the circuit court did not abuse its discretion in allowing the Plaintiff to amend her complaint. *See id.* at 96, 357 S.E.2d at 778.

Finally, there is no question that the amendment to the complaint took place within the purview of the statute of limitations. While West Virginia Code § 55-2-12 (1981) provides for a two-year statute of limitations for personal injury lawsuits, West Virginia Code § 55-2-15 [5] provides:

If any person to whom the right accrues to bring any such personal action, suit or scire facias, or any such bill to repeal a grant, shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues....

5. It is significant to note that the Petitioner argued before the circuit court that the more restrictive statute of limitations provided for in the West Virginia Governmental Tort Claims and Insurance Act, West Virginia Code § 29-12A-6 (1992) applied in this case, rather than the provision found in West Virginia Code § 55-2-15. However, in *Whitlow v. Board of Education,* 190 W.Va. 223, 438 S.E.2d 15 (1993), this Court found that "W.Va.Code, 29-12A-6 (1986), violates the Equal Protection Clause found in Section X of Article III of the West Virginia Constitution to the extent that it denies to minors the benefit of the statute of limitations provided in the general tolling statute, W.Va.Code, 55-2-15 (1923)." *Id.* at 225, 438 at 17, Syl. Pt. 3. Consequently, the Petitioner did not argue the applicability of West Virginia Code § 29-12A-6 to this case on appeal.

When the Plaintiff filed her amended complaint against the Petitioner she was only eighteen years old, which is well within the statute of limitations. *See* W.Va.Code § 55–2–15. Thus, the amended complaint was timely filed and should not have not have been dismissed by the circuit court.

 " 'The writ of prohibition lies as a matter of right when the inferior court does not have jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers.' Pt. 6, syllabus, W.Va. Sec. School Activities Comm. v. Wagner, Judge, 143 W.Va. 508[,] [102 S.E.2d 901] [1958]." Syl. Pt. 3, *State ex rel. West Virginia Secondary Sch. Activities Comm'n v. Oakley*, 152 W.Va. 533, 164 S.E.2d 775 (1968). Finding that the circuit court did not exceed its legitimate powers in this case, we deny the petition for a writ of prohibition.

Based on the foregoing opinion, the petition for a writ of prohibition is hereby denied.

Writ denied.