515 S.E.2d 364

John CASTO and Connie Casto, his wife,
Plaintiffs Below, Appellants,

v.

Larry DUPUY, individually, and Larry Dupuy d/b/a Professional Home Inspection and Radon Testing, and Molton, Allen & Williams Mortgage Corp., Defendants Below, Appellees.

No. 25406.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 17, 1999.

Decided March 26, 1999.

Desiree Halkias Divita, Shuman, Annand, Bailey, Wyant & Earles, Charleston, West Virginia, Attorney for Appellants.

David R. Bungard, Robinson & McElwee, Charleston, West Virginia, Attorney for Appellee Larry Dupuy, individually, and d/b/a Professional Home Inspection and Radon Testing.

Andrew S. Nason, Pepper, Nason & Hayes, Charleston, West Virginia, Attorney for Appellee Molton, Allen & Williams Mortgage Corp.

PER CURIAM:

John Casto and Connie Casto, appellants/plaintiffs (hereinafter referred to as "The Castos"), appeal the summary judgment ruling by the Circuit Court of Kanawha County in favor of Larry Dupuy, d/b/a Professional Home Inspection and Radon Testing,[1] (hereinafter referred to as "Mr.

---

1. Mr. Dupuy was also named as a defendant in his individual capacity.

Dupuy"), and Molton, Allen & Williams Mortgage Corporation (hereinafter referred to as "M.A. & W."), appellees/defendants. The issue in this appeal is whether the circuit court correctly ruled that the Castos' claim sounded only in tort and applied a two-year statute of limitations to the Castos' action.[2] Based upon a review of the parties' arguments and the record below, we conclude that the circuit court erred in granting summary judgment.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In June of 1994, the Castos contacted M.A. & W. for the purpose of obtaining a loan to buy their first home. The Castos contend that M.A. & W. informed them that the home would have to be inspected to determine whether it was structurally sound.[3] It is further alleged by the Castos that M.A. & W. contracted with Mr. Dupuy to perform the home inspection.

Mr. Dupuy inspected the home on June 24, 1994, and forwarded the inspection report to M.A. & W. on or about June 29, 1994. It appears that Mr. Dupuy's report concluded that, notwithstanding some cracks in the walls which required repair, the home was structurally sound. The Castos contend that

they were not provided a copy of Mr. Dupuy's report at the time it was generated.[4] The Castos' loan was subsequently approved by M.A. & W.,[5] and in August of 1994, the Castos purchased the home.

Several months after the Castos purchased the home they observed new cracks forming, in addition to observing the worsening of the old cracks.[6] At some point in October, 1994, the Castos had their friend and contractor, Ray Martin, look at the cracks in the home. Mr. Martin opined that the home should not have passed inspection because of the cracks. In June of 1995, the Castos secured the services of a certified structural inspector, John Knight. The Castos contend that Mr. Knight's inspection reported that the cracks were due to foundational defects and opined that the home should not have passed inspection.

On November 19, 1996, the Castos filed the instant action alleging various theories of liability against Mr. Dupuy and M.A. & W. After a period of discovery, Mr. Dupuy and M.A. & W. moved for summary judgment.[7] The trial court ruled that the Castos' complaint sounded in tort and that the two-year statute of limitations had run. Accordingly, the circuit court granted summary judgment to Mr. Dupuy and M.A. & W.[8] The Castos subsequently filed a motion to reconsider.

---

**2.** The Castos have alleged several assignments of error. However, disposition of the statute of limitations issue renders the other issues moot.

**3.** M.A. & W. decided to have the structural inspection after its appraiser, Bernard Bailey, reported observing some cracks in the home's basement walls.

**4.** M.A. & W. contends that Mr. Dupuy talked with Mr. Casto by phone around the date of the report and informed him of the cracks and the need for their future repair.

**5.** The loan was for approximately $52,000.00.

**6.** At the time of the discovery of new cracks the Castos obtained a copy of Mr. Dupuy's report.

**7.** The Castos did not file a written response in opposition to the summary judgment motion. However, at the summary judgment hearing the Castos opposed the motion. This Court held in Syllabus point 3 of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), that:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

The record supports M.A. & W. and Mr. Dupuy's position that the Castos failed to sustain their burden of production on the motion for summary judgment. However, the Castos filed a motion for reconsideration with the circuit court wherein they properly produced evidence to challenge summary judgment.

**8.** The circuit court also denied, in the order granting summary judgment, a motion by the Castos to amend the complaint to add additional parties.

The circuit court denied the motion. This appeal followed.

## II.

### STANDARD OF REVIEW

 Our review of summary judgment is de novo. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In this case we are primarily asked to review the circuit court's determination that the Castos' case sounded solely in tort and was therefore barred by the two-year statute of limitations.

## III.

### DISCUSSION

#### A. *Contract Claim*

 The Castos contend that their complaint sounded in both contract and tort. The circuit court found "that this lawsuit is one based in tort, not based on a contract between the plaintiffs and any of the defendants." Our case law is clear in holding that " '[a] complaint that could be construed as being either in tort or on contract will be presumed to be on contract whenever the action would be barred by the statute of limitation if construed as being in tort.' Syl. pt. 1, *Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 246 S.E.2d 624 (1978)." Syl. pt. 4, *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996).

A fair reading of the complaint in this case indicates that it sounds in both contract and tort. While the complaint does not provide a model contract claim, it is clear that a contract theory is alleged against M.A. & W.,[9] as well as against Mr. Dupuy.[10]

 As to the contract theory against M.A. & W., the Castos acknowledge that a written agreement does not exist. Instead, the Castos assert through deposition testimony that an oral agreement was made wherein M.A. & W. agreed to obtain a structural inspection of the house before it approved the Castos' loan. Under our law, an obligation "which is not in writing is based on an implied contract and the statute of limitations applicable thereto is five years." Syl., in part, *Sansom v. Sansom*, 148 W.Va. 603, 137 S.E.2d 1 (1964). *See* W.Va.Code § 55-2-

---

9. Count III, paragraph 21 of the complaint reads:

The defendant, Molton, Allen & Williams Mortgage Corporation, agreed to provide the plaintiffs with a qualified professional engineer to perform a structural inspection and provide a proper structural report relative to the soundness and integrity of the structure, foundation and soil upon which said dwelling house is located, and the defendant, Molton, Allen & Williams Mortgage Corporation, breached its agreement with the plaintiffs by selecting the defendant, Larry Dupuy d/b/a Professional Home Inspection and Radon Testing, and engaged him to perform the structural inspection and render opinions as to the structural integrity of the said dwelling house, foundation and soil.

Additionally, Count III, paragraph 22 of the complaint avers, in part:

As a result of the defendants [sic], Molton, Allen & Williams Mortgage Corporation, breach of performance of its agreement in failing to provide a qualified professional engineer and in failing to obtain a proper structural report, the plaintiffs relied upon the defendant, Molton, Allen & Williams Mortgage Corporation, and the defendant, Larry Dupuy d/b/a Professional Home Inspection and Radon Testing, and were caused to purchase the aforesaid residence ... and the plaintiffs have incurred and will incur in the future substantial expenses and sums of money to perform extensive structural repairs and replacement to the said dwelling house to correct the damage that has already occurred and to prevent further damage to the said dwelling house.

10. In Count I, paragraph 15 of the complaint, the Castos allege:

The defendant, Larry Dupuy d/b/a Professional Home Inspection and Radon Testing, agreed to provide a proper structural report and a proper professional opinion of the integrity of the foundation and soil upon which the aforesaid dwelling house was located and failed to properly perform the services for which he was contracted and paid, and in failing to do so, he breached his contract with the plaintiffs, Castos.

6 (1923) (Repl.Vol.1994). In contrast, M.A. & W. argues that the Castos have produced no evidence to prove any type of contractual relationship between M.A. & W. and Mr. Dupuy. In fact, M.A. & W. contends that the evidence indicates that Mr. Dupuy believed the prior owners of the home paid for the inspection, even though he was initially contacted by M.A. & W.

■ As to the contract claim against Mr. Dupuy, the Castos contend that they are in privity of contract with Mr. Dupuy and M.A. & W. The circuit court found "that there is no privity of contract between the plaintiffs and any of the defendants." The rule in this state is that "in order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit." *Robinson v. Cabell Huntington Hosp., Inc.,* 201 W.Va. 455, 456, 498 S.E.2d 27, 32 (1997) (quoting *Woodford v. Glenville State College Hous. Corp.,* 159 W.Va. 442, 448, 225 S.E.2d 671, 674 (1976)). *See also* W.Va.Code § 55-8-12 (1923) (Repl. Vol.1994). Thus, should the Castos be able to establish that M.A. & W. contracted with Mr. Dupuy to perform the inspection for the Castos' sole benefit, privity of contract would exist in this case.

Material issues of fact are in dispute as to the actual existence of an oral contract between the Castos and M.A. & W. Additionally, material issues of fact are in dispute as to whether M.A. & W. actually retained Mr. Dupuy to perform the home inspection, and for whose benefit the inspection was performed. We take no position on the conflicting evidence presented on these issues. Here, our task is to determine whether the complaint could be fairly read as sounding in contract and therefore falling under the five-year statute of limitations. We find that it can be read as asserting a contract cause of action. Thus, the circuit court committed error in concluding that no contract theory was alleged by the Castos.

### B. Tort Claim

■ The Castos' complaint also alleges a tort cause of action against Mr. Dupuy and M.A. & W. Under the tort theory, the Castos argue that M.A. & W. negligently hired Mr. Dupuy and that Mr. Dupuy negligently performed the work for which he was hired. The circuit court ruled that the tort claims were barred by the two-year statute of limitations. *See* W.Va.Code § 55-2-12(a) (1959) (Repl.Vol.1994). In so concluding, the circuit court found that the Castos knew of the cracks in the house in October, 1994, when their contractor friend, Mr. Martin, examined the home. Nevertheless, their complaint was filed some twenty-five months after Mr. Martin rendered his opinion.

■ For this issue the Castos have offered alternative tort theories. The Castos take the position that they did not discover the litigation significance of the damage to their home until June of 1995, when Mr. Knight performed his inspection. Therefore, the tort causes of action are timely based upon the discovery rule. This Court addressed the "discovery rule" in Syllabus point 4 of *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997): [11]

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3)

---

11. As an alternative argument to the discovery rule, the Castos contend the "continuing tort" theory prevented their claim from being barred by the two year statute of limitations. Under the continuing tort theory, when a tort involves a continuing or repeated injury, the cause of action accrues at the date of the last injury. This Court observed in *Ricottilli v. Summersville Memorial Hospital,* 188 W.Va. 674, 677, 425 S.E.2d 629, 632 (1992), that "the concept of a continuing tort requires a showing of repetitious, wrongful conduct." Moreover, we said in *Ricottilli* that "a wrongful act with consequential continuing damages is not a continuing tort." *Id.* (citing *Spahr v. Preston County Bd. of Educ.,* 182 W.Va. 726, 729, 391 S.E.2d 739, 742 (1990)). In the instant proceeding, the continuing tort theory must fail. The single act of the alleged negligent hiring by M.A. & W. or the alleged negligent inspection by Mr. Dupuy clearly present purported consequential continuing damages. In this case there is no showing of repetitious wrongful conduct.

that the conduct of that entity has a causal relation to the injury.

In Syllabus point 3 of *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990), we held that:

> [w]here a cause of action is based on tort ..., the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and *determining that point in time is a question of fact to be answered by the jury.*

(Emphasis added). *See* Syl. pt. 1, *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988) ("The two year statute of limitation for a tort action arising from latent defects in the construction of a house begins to run when the injured parties knew, or by the exercise of reasonable diligence should have known, of the nature of their injury and its sources, and determining that point in time is a question of fact to be answered by the jury."); Syl. pt. 4, *Hill v. Clarke,* 161 W.Va. 258, 241 S.E.2d 572 (1978) ("The question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of medical malpractice is for the jury.").

■ There is no evidence in the record to show whether or not Mr. Martin was an expert in the structural design of houses or that he was qualified to render an expert opinion on the cause of the cracks in the Castos' home. The evidence merely indicates that Mr. Martin was a "contractor" friend who rendered an opinion about the cracks. On the other hand, it appears that after Mr. Martin's assessment of the damage to the home, the Castos obtained the services of a structural engineer, Mr. Knight, for the express purpose of rendering an expert opinion on the cause of the cracks in their home.

In June of 1995, Mr. Knight informed the Castos that in his professional opinion the home should never have passed inspection for structural integrity. In considering a motion for summary judgment, all facts and inferences "are viewed in the light most favorable to the nonmoving party[.]" *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995). With this standard in view, a clear factual dispute exists as to whether Mr. Martin's opinion or that of Mr. Knight triggered the discovery rule for the purpose of tolling the two-year tort statute of limitations. This material factual dispute involving the tort theory of liability should not have been decided by the trial court. Under *Stemple,* it is a jury question that precludes summary judgment.[12] *See* Syl. pt. 3, 184 W.Va. 317, 400 S.E.2d 561.

## IV.

## CONCLUSION

For the reasons set forth in the body of this opinion, we find that the Circuit Court of Kanawha County erred in concluding that no contract theory was presented. We find also that the circuit court erred further in concluding that no factual dispute existed regarding the discovery rule for the purpose of tolling the statute of limitations applicable to tort-based causes of action. Consequently, the summary judgment order of the Circuit Court of Kanawha County is reversed.

Reversed.

---

**12.** The Castos also assigned error to the circuit court's denial of their motion to amend the complaint to add additional parties. The court's ruling was the natural result of the court's decision to grant summary judgment to M.A. & W. and Mr. Dupuy. The orders appealed in this case do not present any findings on the issue of the Castos' motion to amend its complaint. In light of our reversal of the grant of summary judgment, on remand the circuit court must re-consider its decision to deny an amendment to the complaint. We note "that although a trial court has some discretion to deny leave to amend ..., it has been uniformly held that leave to amend must be freely given." *Farmer v. L.D.I., Inc.,* 169 W.Va. 305, 307, 286 S.E.2d 924, 926 (1982). *See McDowell County Bd. of Educ. v. Stephens,* 191 W.Va. 711, 718, 447 S.E.2d 912, 919 (1994).